**EASTMAN et al. v. NELSON et al.**

No. 1736–KA.

First Division. Juneau.

May 31, 1935.

W. C. Arnold, of Ketchikan, for plaintiff.
A. H. Ziegler, of Ketchikan, for defendants.

ALEXANDER, District Judge.

This is an action by the plaintiff against the defendants on a written lease of certain premises in the city of Ketchikan whereby she seeks to recover under the covenants of the lease for certain rents and for repairs and taxes on the leased property.

The complaint alleges the lease in question was a written lease made on or about the 4th day of June, 1926, by and between the plaintiff and defendants, wherein and

whereby plaintiff leased to the defendants certain premises in the city of Ketchikan, Alaska, for a term of ten years, for an agreed rental of $24,000, payable at the rate of $200 a month in advance, commencing on the 1st day of July, 1926. The lease further provided that the defendants, as lessees, should keep the buildings to be erected on the premises in good condition and repair, including piling and foundation, and at the termination of the tenancy to yield up the premises with all buildings erected thereon in good repair and condition, including the piling and foundation.

The lease further provided that the lessees shall seasonably pay and discharge all existing and future taxes, assessments, and burdens whatsoever assessed, charged, or imposed by any public authority, upon the demised premises or upon any erections thereon, during the term of said lease.

These things the complaint alleges the defendants as lessees have failed and neglected to do, and plaintiff seeks by this action to recover therefor.

In his answer, the defendant Nelson, after admitting the execution of the lease in question, denies, in substance, the other allegations of the complaint, and then sets up as an affirmative defense that, after the execution of said lease, C. J. Foss, on the 14th day of October, 1926, in writing, sold, assigned, and transferred to him all the interest of C. J. Foss in said lease, and that thereafter and up until the 10th of March, 1930, he remained in the sole possession of said premises under the lease; that on March 10, 1930, he (Nelson) assigned said lease to Charles S. Conover, and that plaintiff, on said date, assented to the assignment of said lease by him (Nelson) to Conover, and thereafter agreed to the substitution of him (the said Conover) for the defendant Nelson as lessee in said lease; that thereafter the plaintiff accepted the rentals due under said lease from said Conover and in all matters and things recognized said Conover as the lessee under said lease; that, at the time said lease was so transferred by him (Nelson)

to Conover on March 10, 1930, the said property was in all respects in as good condition as same was when possession thereof was taken, reasonable wear and tear excepted; and that defendant Nelson, at the time of said assignment to said Conover had complied with all the obligations imposed upon him by the terms of said lease and was not in any manner indebted to the plaintiff under said lease and is not now indebted to plaintiff on account thereof. It is then recited that plaintiff thereafter recognized Conover as the sole lessee under said lease, and that, by reason of the acts of said plaintiff in consenting in writing to the transfer of said lease by defendant Nelson to Conover and by accepting the rentals due thereunder from Conover, and by reason of recognizing said Conover as the sole lessee under the terms of said lease, plaintiff is now estopped and precluded from asserting any claim whatsoever against said defendant, and particularly from asserting, suing for, or establishing the claims mentioned in plaintiff's complaint against said defendant Nelson.

The reply in effect, denies all of the new matter set up in the affirmative defense.

The facts, as they appear from the testimony, in substance, show:

The admitted making of the lease in question; that, pursuant thereto, the lessees went into possession of the property which was at the time little more than a naked lot, as the building which had formerly been on the premises had burned; that the lessees thereupon proceeded to build a building thereon in accordance with the terms and specifications contained in said lease and to occupy the same.

It then appears that on October 14, 1926, by an instrument in writing, the defendant Carl J. Foss sold and assigned all of his rights, title, and interest in and to the lease in question and in and to the building erected on the leased premises to the defendant N. G. Nelson, and said Nelson thereby assumed and agreed to pay all outstanding obliga-

tions under said lease and against said property, since which time Foss has had no interest therein.

Thereafter the defendant Nelson, one of the original lessees, remained in the continuous possession of the property until on or about March 10, 1930, when he made an assignment of the original lease to Charles S. Conover, and the plaintiff, lessor, assented thereto, all as shown by the written indorsements, under date of March 10, 1930, appearing on the back of said lease. Conover went into possession of said property on or about March 10, 1930 and paid the rentals due the lessor regularly until on or about August 1, 1933, when, by an arrangement made between said Conover and plaintiff, the rent was temporarily reduced by the lessor for one year from August 1, 1933, from $200 per month to $150 per month, and the insurance on the building reduced from $24,000 to $20,000. Pursuant to this arrangement, Conover paid rent for August, September, and October, 1933, at $150 per month, and in November and December, 1933, paid $100 per month. No rent being forthcoming in January, 1934, the plaintiff came to Ketchikan to investigate the situation and find out what the difficulty was, and saw for the first time the building which had been erected by the lessors under the terms of said lease. She found Conover unable to carry out the lease, the building in bad condition, and delinquent taxes against the property. On January 19, 1934, she notified Nelson by registered letter of the particulars in which the lease was in default and advised him that she was holding him liable under the lease. To this letter Nelson made no reply; and this action was commenced in May, 1934.

It is admitted by the defendant Nelson that he remained bound under the lease until March 10, 1930, but he stoutly contends that by the assignment of March 10, 1930, and the plaintiff's consent thereto, coupled with the events and circumstances that occurred thereafter, he was released from all obligations under said lease as of March 10, 1930, and that plaintiff fully accepted the substitution

of Conover as her tenant and thereafter ceased to look to him as in any way liable thereunder. He cites particularly plaintiff's acceptance of rent thereafter from Conover, her letter of August 5, 1933, agreeing to a reduction of rent and a reduction in the amount of fire insurance carried on the building, and her alleged failure to consult or communicate with him in regard to a reduction in the rent or insurance or to notify him that the rent or taxes, etc., were delinquent or that she still looked to him for performance of the covenants of the lease.

There is, however, nothing in these acts, even if all true, that would terminate Nelson's liability under the lease. Nor would such acts, if proven, be sufficient to constitute an estoppel. It should be remembered that Nelson did not surrender the lease on March 10, 1930, but never intended to, as shown by the terms of the assignment to Conover, which specifically provided that "Title to said lease to remain in N. G. Nelson until said contract is fully performed" (an estimated three years). And it may be further observed in passing that there is no evidence that plaintiff ever had any knowledge of the contents of the assignment from Nelson to Conover or its terms or notice as to when and if its terms had been performed. Furthermore, the circumstances surrounding the assignment from Nelson to Conover and plaintiff's consent thereto are not to be considered in the same light as if the litigants had been dealing with each other directly. The evidence shows that at and prior to the assignment of March 10, 1930, both parties were represented by able counsel upon whom both relied, and we cannot therefore assume that the parties meant to do anything other or more by the assignment and consent than the written memorandum, prepared by their attorneys, shows, and we do not feel at liberty to go beyond that memorandum or to enlarge upon its legal effect.

The authorities are agreed that the written assignment and the consent of the lessors thereto did not operate to release Nelson from liability on the covenants of the lease.

The rule is laid down in 16 R.C.L. at page 843, under the title of "Landlord and Tenant":

"343. In General. An assignment by the lessee does not affect his subsequent liability upon the express covenants contained in the lease, and this is true though the assignment is with the consent of the lessor; and although the assignment be by act of law and the estate be taken from the lessee against his consent he nevertheless continues liable upon his express covenants.

"The reason for the continued liability of the lessee is that although by the assignment the privity of estate between lessor and lessee is terminated, there still remains the privity of contract between them created by the lease, which is not affected by the assignment, although made with the assent of the lessor, and the lessee still continues liable on his covenant by virtue of the privity of contract. Thus the lessee is liable after assignment upon his covenant to pay taxes, and upon his express covenant to repair."

So also is the lessee liable on his covenant to pay rent. Section 345, 16 R.C.L. 845: "It is the well settled rule that the lessee after assignment is liable on his express covenant to pay rent for the subsequently accruing rent, as in such case, though the privity of estate is terminated by the assignment, the privity of contract is unaffected."

Section 346: "The lessee is liable to the lessor on an express covenant to pay rent, even though he has assigned the leasehold with the express consent of the lessor, so long as there is not a specific release of liability, and this is true though the lease provides that it shall not be assigned without the consent of the lessor and his consent to the assignment was given. Nor is the lessee's continued liability for unpaid rent affected by the fact that the lessor has received payments of rent from the assignee. The reason for this is that the covenant to pay rent inheres in the estate as a covenant real, and binds the assignee of the term by reason of his privity of estate to pay the rent accruing during his ownership and possession of the estate; so that

after an assignment of the lease the lessor has a double and several security for the payment of his rent, either or both of which he may pursue until satisfaction is obtained. Therefore, the receipt of rent from the assignee of lessee does not amount to a novation or release of the lessee, but is the assertion of a right which accrued to the lessor as an incident to the assignment."

The rule is similarly stated in 36 Corpus Juris, p. 371, under the title "Landlord and Tenant": "(1227) b. After Assignment of Lease—(1) Liability of Lessee—(a) Under Express Covenant to Pay Rent. The assignment of a lease does not annul the lessee's obligation on his express covenant to pay rent, even though the lessor has assented to such assignment, and collected rent from the assignee, unless the lessor has accepted the surrender of the lease and released the original lessee, upon a sufficient consideration; * * * The effect of the assignment may be said to be to make the lessee a surety to the lessor for the assignee, who as between himself and the lessor is the principal, bound while he is assignee, to pay the rent and perform the covenants, and the lessee is not entitled to notice of default of the assignee to pay the rent. * * * The fact that the assignee is also liable for rent through privity of estate, or express agreement to assume the obligations of the lease, will not discharge the lessee. The lessor may, at his election, pursue either or both for payment, although he can have but one satisfaction."

Many authorities are cited in the footnotes of the above text quotations which fully support the rule announced, but are not cited here for brevity's sake.

Nor would the acceptance of rent from Conover terminate Nelson's liability.

In addition to the general rule already quoted from Ruling Case Law and Corpus Juris, we find this particular phase of the question treated specifically in an annotation found in 36 A.L.R. p. 316. The annotator states the rule thus: "It is established by an unbroken line of authority

that where a lease containing an express covenant to pay rent has been assigned, the fact that the lessor thereafter accepts rent from the assignee does not release the lessee from his liability for rent during the remainder of the term, the assignment terminating the privity of estate between the lessor and lessee but not the privity of contract."

This is also the rule in Oregon.

"We have seen that the defendant expressly covenanted to pay rent. Under such state of facts, a leading text-writer thus declares the law:

" 'The assignment of a lease does not annul the lessee's obligation on his express covenant to pay rent, even though the lessor has assented to such assignment and collected rent from the assignee, unless the lessor has accepted the surrender of the lease and released the original lessee upon a sufficient consideration.' 36 C.J. 'Landlord and Tenant,' § 1227." Peterson v. Dose, 124 Or. 30, 263 P. 888, 889.

The state of Washington has reached the same conclusion, and states the rule thus: "Mere assignment of a lease, acceptance of rent by landlord from the assignee, and going into possession by assignee, does not absolve original lessee from obligation to pay rent, or see it paid in full compliance with express covenants made by the terms of the lease." Medgard v. Shimogaki, 135 Wash. 527, 238 P. 574.

Nor can it be said that the reduction of the rent or the reduction in the amount of fire insurance prejudiced Nelson or affected his continued liability under the express covenants of the lease.

The law in this regard is stated in 36 C.J. p. 373, par. 1227, thus: "The fact that the lessor agrees with the assignee to accept a lower rent does not discharge the continued liability of the lessee on his express covenant."

And this statement of the law is approved by the Supreme Court of Oregon in Abrahamson v. Brett, 143 Or. 14, 21 P.(2d) 229, 233: "Defendant contends that the re-

duction of the rent from $150 to $125 per month, which was shown to be for a temporary purpose, constitutes an estoppel. The lessees were not prejudiced by the reduction of rent. * * * The voluntary reduction in rent by the lessor to the assignee made during the term did not relieve the lessees and assignors, Brett and Kelly, from the covenant in the lease to pay the rent."

The facts in the above case are almost identical with the instant case, and it deals with practically every question presented in the present action.

The same rule applies with regard to Mrs. Eastman's action in regard to the reduction of the insurance to be carried on the building for her protection. The clause in the original lease requiring the lessor to insure the premises against fire was a covenant for Mrs. Eastman's protection, and she could waive it on her own behalf at any time without impairing the lease. Under the provisions of the lease in case of the damage or destruction of the premises by fire (paragraph 7), the insurance money was to be applied by the lessee to repairs or the restoration of the building, or, if the lessor failed to restore the building then all of the insurance money was to pass to Mrs. Eastman as liquidated damages. Thus the limit of Nelson's liability was the amount of insurance carried on the building with Mrs. Eastman's approval, and she, having approved the reduction in amount to $20,000, waived any right she may have had to complain of such reduction, and Nelson could not have been thereby prejudiced. Furthermore, Mrs. Eastman consented to the reduction of the insurance in her own behalf only. It does not appear from the evidence whether Conover consulted Nelson on the matter or not, but that is another matter and not in issue here.

■ Nor was Mrs. Eastman under any legal duty to give Nelson notice of Conover's default or to advise him that she still held him liable under the lease before she did.

The evidence shows that Mrs. Eastman did notify Nelson of the condition of things pertaining to the lease with-

in a week after she knew them herself, with the possible exception of the delinquency in the rent. The evidence shows that she arrived in Ketchikan on January 12, 1934; that prior to that time she had not seen the building erected by the lessees; that she had no information about its condition or about any unpaid taxes on the property; that she immediately set about to investigate the condition of things and found the building in a bad state of repair and the taxes delinquent and the assignee of the lease unable to carry out its terms. On January 19, 1934, she notified the defendant Nelson by registered mail that she was holding him responsible under the lease, and, not hearing anything from him, on February 14, 1934, took possession of the property and proceeded to make the repairs thereon that were necessary to make the property habitable and fit for the purposes for which it was constructed. Under these circumstances, we conclude that the plaintiff is entitled to recover from the defendant Nelson, in accord with the proof, the following sums:

Unpaid rent in the sum of.................$   325.00
Unpaid taxes in the sum of................ 1,082.19
Repairs necessarily made.................. 1,032.13

Or a total of............................$2,439.32
Together with attorney's fees herein in the sum
    of ...................................$   500.00.

Findings and judgment may be prepared and submitted in accord with this opinion.