PAUL M. HAMLEN *vs.* REDNALLOH COMPANY.

SAME *vs.* SAME.

Suffolk.   October 4, 1933. — June 24, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Landlord and Tenant,* Assignment of lease, Rent. *Assignment. Waiver. Contract,* Construction. *Surety. Trust,* Construction of instrument creating trust, Trust to furnish security for obligation of another. *Tender. Pleading, Civil,* Answer. *Evidence,* Admission. *Practice, Civil,* Payment into court. *Words,* "Shall pay."

Discussion by DONAHUE, J., of the general principle of construction that the expression by the parties in a written instrument of certain things indicates their intention to exclude other unmentioned things.

The liability of the lessee in a lease to pay rent to the lessor was not terminated by an instrument in writing wherein the interest of the lessee in the lease was assigned, the lessor assented to the assignment, the assignee covenanted with the lessor and with the lessee to pay the rent and to perform the other covenants in the lease, and it was provided that the lessor did not waive any then existing default on the

part of the lessee or the obligation of the lessee under the lease to restore the leased premises previous to the expiration of the lease.

Upon an assignment of the lessee's interest in a lease, assented to by the lessor, an obligation of the assignee to the lessor to pay the rent thereafter falling due arose both from the privity of estate created by the assignment and also from an express covenant by the assignee with the lessor and lessee in the assignment to pay such rent; and, as between the assignee and the lessee, the assignee became the principal debtor, and the lessee a surety, with respect to such rent.

Where the lessor in a lease to a corporation, as a condition of his assenting to an assignment of the lessee's interest, required the establishment of a trust fund to secure payment of the rent, and for that purpose one interested in the lessee corporation thereupon transferred property of his to a trustee under an instrument providing that upon a certain contingency the trustee "shall . . . pay" rent unpaid when due and that upon the termination of the trust any remaining balance of the fund should be repaid to the settlor, the proper construction of the trust instrument was that the trust fund was in the position of a surety for the payment of rent and that upon the happening of the specified contingency the trustee was obliged to pay overdue and unpaid rent and had a right to pay it.

Payment or a proper tender by the trustee above mentioned to the lessor of unpaid and overdue rent after the happening of such contingency terminated the lessor's right to recover such rent from the lessee, irrespective of the rights and obligations arising from such a payment as between the trust fund and the lessee as sureties; it could not properly be said in the circumstances that the making and acceptance of such a payment constituted merely the purchase by the trustee of a beneficial interest in the lessor's claim against the lessee for such rent, with an intent on the part of the trustee to keep such claim in existence for the benefit of the lessor.

In an action by a creditor against one of two sureties for his debtor's debt, an allegation in the defendant's answer that the other surety had tendered the amount of the debt to the plaintiff constituted an assertion by the defendant that by reason of such tender he was no longer liable to the plaintiff, not an admission of the defendant's liability to the plaintiff.

Where no tender was made by the defendant in an action within the times specified in G. L. (Ter. Ed.) c. 232, § 12, but before trial the defendant paid into court a certain sum, including the plaintiff's costs to the time of such payment, and it appeared upon trial that nothing was due from the defendant to the plaintiff, the plaintiff became entitled to the sum paid in by the defendant, and the defendant became entitled to judgment in his favor, under Rule 42 of the Superior Court (1932).

Two ACTIONS OF CONTRACT. Writs dated March 16, 1932, and June 2, 1932, respectively, and afterwards amended.

The actions were heard together in the Superior Court by

*Walsh,* J., upon a case stated. Material facts are stated in the opinion. The judge ordered judgment for the defendant in each action. The plaintiff appealed in each action.

*R. W. Hale,* for the plaintiff.

*R. G. Dodge,* for the defendant.

DONAHUE, J. The plaintiff in these actions seeks to recover rent alleged to be due for a part of the month of February and for the month of May, 1932, under the covenants of a lease dated July 23, 1926, in which the plaintiff was lessor and the defendant, then called L. P. Hollander Company, was lessee. After that lease was executed the defendant occupied the demised premises until March 29, 1929, when it sold the business which it had conducted in part on those premises to L. P. Hollander Company Inc., a new corporation which was under a different management. On that date the plaintiff, the defendant, and the newly formed corporation entered into a sealed indenture which included an assignment of the lease by the defendant to the new corporation, the consent thereto of the plaintiff lessor and a covenant of the new corporation both with the plaintiff and with the defendant to pay rent according to the terms of the lease and to perform all its covenants and stipulations. The indenture also stated that the lessor knew of no existing default on the part of the original lessee but did not waive any such default and that the lessor did not waive the obligation of the defendant under the lease to restore the leased premises prior to the expiration of the lease.

As a condition to his giving consent to the assignment the plaintiff required that a trust fund should be created to insure the payment of the rent and the performance of the other conditions of the lease. Accordingly such a trust fund was then created by Theodore C. Hollander, who controlled the defendant corporation by virtue of his ownership of by far the greater part, although not all, of its capital stock. He deposited securities of the value of $50,000 with a bank as trustee under a written agreement of trust signed by himself and the bank.

The new corporation took possession and remained in occupation of the demised premises until February 19,

1932, when it was adjudicated a bankrupt. On March 16, 1932, the plaintiff brought the first of the two actions here being considered, the declaration claiming the difference between the rent for the month of February under the lease and a sum paid by the receiver in bankruptcy for occupancy from February 20 to February 29, inclusive. The trustee under the trust agreement, on May 24, 1932, tendered to the plaintiff the amount of the unpaid balance of rent for the month of February with interest thereon and the taxable costs in the first of the present actions. The plaintiff accepted all of the amount tendered except $49.08, which exceeded the amount of the taxable costs in that action.

The second action was brought on June 2, 1932, to recover the rent for the month of May. The trustee under the trust agreement, on July 8, 1932, tendered to the plaintiff the full amount of the rent for that month with interest and the taxable costs in that action which amounted to $9.80. The plaintiff accepted all of the amount tendered except $9.80.

Both of the tenders were made by the trustee at the request of Hollander, the creator of the trust. It appears in the record that the unaccepted tenders of $49.08 in one case and $9.80 in the other have been kept good and that the defendant on April 11, 1933, obtained these amounts from the trustee and paid them into court.

The cases were tried together on a case stated, before a judge of the Superior Court. He ordered judgment for the defendant in each case and the plaintiff appealed.

1. Under the construction which we think must be given to the instrument of assignment the liability of the defendant lessee to pay rent to the lessor was not terminated. The mere assignment of a lease with the consent of the lessor who takes a covenant from the assignee to pay rent or thereafter collects rent from the assignee does not relieve the original lessee from his contract to pay rent expressed in the covenants of the lease. *Carlton Chambers Co.* v. *Trask*, 261 Mass. 264, 267. *Talbot* v. *Rednalloh Co.* 283 Mass. 225, 235. The defendant contends that since the assignment recites that two described covenants are not

waived, the intention is manifested that other unmentioned covenants, including the covenant to pay rent, were waived. The principle of construction invoked, namely, that the expression by the parties in a written instrument of certain things indicates their intention to exclude other unmentioned things, applies where it may reasonably be inferred that if the parties intended to include subjects to which no reference is made in the instrument they would have done so by the addition of appropriate words. This, of course, is not an arbitrary rule to be applied, without consideration of the language of an instrument read as a whole, to bar reasonable inferences of a contrary intention. *Gage* v. *Tirrell*, 9 Allen, 299, 305. *Leonard* v. *Stickney*, 131 Mass. 541, 543. *Simmons* v. *County of Suffolk*, 230 Mass. 236. Where, as here, an instrument recites the nonwaiver of a few of many existing obligations not created by its terms, and those referred to differ in class and kind from those unmentioned and there appears to have been reasonable occasion for specific reference to the few, little basis is afforded for an inference of intended waiver of obligations of which no mention is made. Neither of the two obligations here referred to has any direct or necessary connection with the obligation to pay rent. In view of the advent of the assignee as occupant of the premises in place of the lessee it was natural and prudent on the part of the lessor to require mention in the instrument of these two matters. It was thus made plain to the assignee that if any serious, unknown past default of the lessee should later come to light the lessor might enter, take possession and terminate the lease notwithstanding the occupancy of the assignee. The other obligation was the restoration of the premises to their original condition before the expiration of the lease in the somewhat distant future. The performance of such an obligation is ordinarily associated with the possession of demised premises. The statement of the nonwaiver of that obligation is reasonably attributable to the desire of the lessor to negative any contention that the lessee, which at the time of performance would not be in possession, was thereby free from the obligation of that covenant.

The intent of the parties that the defendant should continue to be liable under the covenants of the lease is manifested by the express covenant of the assignee with the lessee to pay the rent which should thereafter become due and to perform all the lessee's covenants and stipulations in the lease. Such a covenant would be unnecessary and without apparent purpose unless it was intended that the liability of the original lessee under the lease should continue. *Way* v. *Reed*, 6 Allen, 364, 369. The only reasonable construction of the instruments of assignment and of creation of the trust fund is that the lessee continued to be liable for the rent under its covenant in the lease.

2. When, under the terms of the lease, an instalment came due, on the first day of each month, a debt for the payment of that instalment came into existence. We are here concerned with the relationship of the assignee, the original lessee and the trust fund to the debt for the balance of the rent for the month of February and the debt for the rent for the month of May in the year 1932. After the assignment of the lease the assignee became the debtor of the lessor for successive monthly instalments of rent thereafter falling due. That relationship of debtor and creditor would result from the privity of estate which the assignment created. *Kacavas* v. *Toothacker*, 278 Mass. 302, 304. It also existed by reason of the assignee's express covenant in the written assignment to pay rent to the lessor according to the terms of the lease. *68 Beacon Street, Inc.* v. *Sohier*, 289 Mass. 354, 359.

Although the liability of the defendant lessee to pay rent under its covenant in the lease was not terminated by reason of the assignment, one effect of the execution of that instrument, to which the lessor was a party, was, as between assignee and lessee, the creation of the relationship of principal and surety as to the debts for rent thereafter coming due under the lease. *Collins* v. *Pratt*, 181 Mass. 345, 347.

The trust fund which was required by the lessor as a condition to his giving consent to the assignment also provided security for the payment of the rent. The terms on which the fund was to be held, the obligations of the trustee repre-

senting it, the occasions when payments from it should be made, the extent and the character of the suretyship which it provided were set forth in a formal, carefully drawn instrument signed by the creator of the trust and by the trustee. It provided for payments to the lessor out of the trust fund in three contingencies, namely, upon notice from the lessor of defaults in any of the lessee's obligations under the lease, upon the termination of the lease by reason of any such default and upon the bankruptcy of the assignee. In the first contingency mentioned there was no obligation on the trustee to make payments out of the trust fund until he received from the lessor notice of a default stating the amount due the lessor because of the default. As to the other two contingencies the obligation of the trustee to make payments from the fund arose upon the happening of the stated events and was not by the terms of the instrument made dependent upon the receipt of notice from the lessor. In the event which happened, that is, the bankruptcy of the assignee, the trust instrument provided that the trustee "shall . . . pay" the rent then due, or thereafter falling due, and not paid. The necessity, and the time, for performance of the obligation of the trustee to make payment from the fund, in the event of bankruptcy of the assignee, is not expressed in uncertain or ambiguous words. The words the parties chose to use must be taken in their natural and ordinary sense. *Morse* v. *Boston,* 260 Mass. 255, 262. The phrase "shall . . . pay" is not expressive of the thought of mere permission to the trustee to make payment or of option in the lessor to require payment. The words are imperative. We think that the language of the instrument must be construed as manifesting the intent that after the bankruptcy of the assignee the trustee was under the obligation to pay and had the right to pay rent then due, or thereafter falling due, and not paid.

The trustee attempted to fulfil its obligation and to exercise its right. As representative of a surety the trustee had the right to make tender of performance of the obligation of the assignee by offering to pay the debt assured when it became due and was not paid. *Sharp* v. *Miller,* 57 Cal.

415. *Kruse* v. *Blair,* 127 Ore. 393. Williston, Contracts, § 1235. It tendered to the lessor the full amount of the rent due under the lease on account of the February and May instalments of rent with interest and with costs in the present actions. The lessor accepted all of the amount tendered on account of the May rent including the interest, but refused to take the amount of costs in the action for the May rent amounting to $9.80. He accepted all of the amount tendered on account of the February rent except $49.08 which is somewhat in excess of the amount of costs in the action brought to recover that instalment. The question here presented is whether the lessor's refusal to accept full payment of the debt from the trustee affects the defendant's obligation to the lessor. Questions which might arise between two sureties when one has made full payment of the debt and seeks contribution from the other are not here involved.

The plaintiff, who was a party to the instrument of assignment, could not rightly ignore the relationship of principal and surety arising between the assignee and the lessee as the result of that transaction. A creditor owes one who is a surety for a debt or undertaking the duty of continuous good faith in dealing with the debt or undertaking, or with security received to assure the payment of the debt or the performance of the undertaking. The duty arises not from any contract of the creditor with the surety but from the equities of the situation. *Baker* v. *Briggs,* 8 Pick. 122, 129. *American Bank* v. *Baker,* 4 Met. 164, 176. *Guild* v. *Butler,* 127 Mass. 386, 389. *White's Administrator* v. *Life Association of America,* 63 Ala. 419. *Fisher* v. *Stockebrand,* 26 Kans. 565. *Curiac* v. *Packard,* 29 Cal. 194. There was but one debt owed to the plaintiff upon the falling due of a particular instalment of rent under the lease. The plaintiff was entitled to one, but only to one, payment of such a debt. So far as concerns actual payment of such a debt it would make no difference if it were made by principal, surety or a third person having the right to make it. *Dalton* v. *Woburn Agricultural & Mechanic Association,* 24 Pick. 257. *American Surety Co.* v. *Creamery Commissioners,* 98 Vt. 313. Williston, Contracts, § 1219. The plaintiff accepted payment

from the trustee of the full amount due for the May rent with interest. That discharged the debt for that instalment of rent. "In such a case the plaintiff cannot recover costs, even though the payment is made after suit brought." *Davis* v. *Harrington*, 160 Mass. 278, 280.

There was here no actual payment of the entire debt for the February rent simply because the plaintiff did not wish it to be wholly paid. He refused to accept payment of a small fraction of the debt for which the defendant which he now sues was surety. All that the plaintiff would in any event be entitled to demand from the defendant was the payment of that debt when it became due and was unpaid. One in the position of a surety for the payment of a debt by another has the right to expect that the creditor will accept payment of that debt when due. *Life Association of America* v. *Neville*, 72 Ala. 517. *Spurgeon* v. *Smitha*, 114 Ind. 453. *Joslyn* v. *Eastman*, 46 Vt. 258. *Title Guaranty & Surety Co.* v. *Poe*, 138 Md. 446. Where, as here, full payment was tendered by another having the obligation and the right to make payment, we think that good faith on the part of the plaintiff required its acceptance and that its rejection relieved the defendant from liability to the plaintiff so far as concerns the February instalment of rent.

The plaintiff contends that he is entitled to recover from the defendant the full amount of the unpaid balance of the February rent, substantially all of which he has accepted from the trustee, and the full amount of the May rent, all of which the trustee has paid him. As one reason for his contention he asserts that the trust fund was not in the position of a surety for the debt of the assignee but, as stated in his brief, was "a source from which reimbursement could be expected." The circumstances attendant on the transaction and the language of the instruments which express it support the conclusion that it was intended by the parties that the fund should stand in the position of a surety. The written assignment and the trust instrument were parts of one transaction. The plaintiff was not willing to consent to the assignment of the lease with no other

security for the performance of its covenants than the suretyship of the defendant which arose from the assignment. His position as stated in the agreed facts was that a trust fund "should be created to insure the payment of the rent and the performance of the other conditions." The trust agreement puts definite obligations on the trustee, the sole representative of the fund, to pay money due the lessor upon default at any time in the performance of any of the lessee's covenants in the lease and upon termination of the lease because of such defaults and upon the bankruptcy of the assignee. These are manifestly the obligations of a surety.

The plaintiff contends that the payments made to him by the trustee amounted at most to the purchase by the trustee of a beneficial interest in all claims which the plaintiff had against the assignee and against the defendant "with the benefit of any subrogation which equity can justly work out." He looks upon the trustee bank as if it were an ordinary trustee under a settlement of property where the settlor no longer has an interest in the property and where the only interests to be considered are those of the beneficiary. But that is not the situation created by the trust agreement in the present cases. Its purpose manifestly was not to make a gift to the beneficiary but merely to furnish further security for the performance of the covenants of the lease. The trust agreement provided that any balance of the fund remaining at the termination of the trust should be returned to the creator of the trust. The bank was in the position of a trustee for him as well as for the plaintiff and owed him the duty not only of strict compliance with terms of the trust agreement in making payments but also in any transaction concerning payments to protect his interests where that could be done consistently with the obligations owed, under the agreement, to the plaintiff. The trustee in such a transaction could not ignore the interests of the settlor and be guided solely by those of the plaintiff. The trustee's as well as the plaintiff's intention must be considered in determining the character of the transaction when the payments in question were made.

We see nothing in the circumstances existing at that time to indicate that the participants intended that there should be only a purchase of a beneficial interest in the plaintiff's claim against the defendant for rent. Nothing was said by either about buying or selling or transferring anything. The parties dealt at arm's length. There were no negotiations. The character of the transaction was fixed by the trustee, the moving party, who made a tender. The plaintiff accepted part and rejected part of what was tendered. The purpose and effect of a tender are not the purchase of rights but the relief from liability. The relief of the trust fund from liability in the interests of the settlor is, we think, the only intention of the trustee which is fairly inferable. If it should be assumed that there was an intention on the part of the trustee to purchase a beneficial interest in the plaintiff's claim against the defendant it must also be assumed that the trustee must have intended that the lessor's right to proceed against the defendant was terminated for if that was not so there would be no subrogation. The defendant would not be obliged twice to pay one debt, to different persons. The inference that the trustee intended, by his simple act of tender of the amount of the debt due, to assume the obligation to keep alive the plaintiff's rights against the defendant for the plaintiff's benefit is not a reasonable one.

The right of the trustee to take from the fund and include in its tenders to the plaintiff the amount of the plaintiff's costs in the present actions is questioned by the plaintiff. But the trustee in doing this was not a mere volunteer. It had the right if it should be deemed best in the interests of the settlor of the trust to make a tender of the amount which the fund had actually become obligated to pay. It would seem that in the circumstances a tender would not have been adequate unless the costs were included. (See *Hampshire Manufacturers Bank* v. *Billings,* 17 Pick. 87.) However, if the inclusion of the costs in the trustee's offer of performance was not warranted, since the plaintiff rejected the costs the fund was not thereby permanently depleted to that extent and the plaintiff was not harmed thereby.

Another contention of the plaintiff is that the recital in the defendant's answer of the trustee's tender of performance "settles the merits of the obligation sued on in favor of the plaintiff." The recital in the defendant's answer, instead of being an admission of the defendant's liability in the present actions, is an assertion that by reason of the trustee's tender of the amount of the debts, the defendant is no longer liable for them.

There is in these cases no question as to a statutory tender since no tender was made at least four days before the return day of the writs. G. L. (Ter. Ed.) c. 232, § 12. Before there was any statute in this Commonwealth dealing with the matter of tender (St. 1830, c. 85), by obtaining a "rule in the common form" in the particular case (*Boyden* v. *Moore*, 5 Mass. 365, 372) a defendant might by the payment of money into court become entitled to the advantageous effects of a tender. *Suffolk Bank* v. *Worcester Bank*, 5 Pick. 106. Modified at times by general rules of court, the practice continued after the passage of statutes regulating tender, *Williams* v. *Ingersoll*, 12 Pick. 345. *Whipple* v. *Newton*, 17 Pick. 168. *Hart* v. *Goldsmith*, 1 Allen, 145. At the time these actions were brought the method of making such payments into court and the effect thereof was regulated by Rule 42 of the Superior Court (1932). The defendant before the trial of these actions paid into court in compliance with that rule $49.08 which includes the amount of the plaintiff's costs, at the time of the payment, in the action for the February rent, and $9.80, the amount of his costs in the action for the May rent. Under the terms of Rule 42 the plaintiff became entitled to receive the amounts paid into court and they are payable to him at his request. The rule further provides that "if the plaintiff does not prove more to be due to him than the sum thus paid in, the defendant shall be entitled to a verdict." The plaintiff has not proved that anything was due him. Judgment was properly ordered in each case for the defendant.

*Order of judgment for defendant in each case affirmed.*