JOSEPH WALKER, trustee, & another *vs.* REDNALLOH COMPANY.

Suffolk.    November 8, 1937. — March 2, 1938.

Present: FIELD, DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Landlord and Tenant,* Assignment of lease, Rent, Termination of lessee's obligations. *Surety. Release.*

After the assignment of a lease with the consent of the lessor, the lessee was discharged from his obligations under the lease by the lessor's express agreement or tacit consent to substantial alterations of the premises which were made by the assignee without the assent of the lessee, were not permitted by the lease and were of no benefit to the lessee.

CONTRACT. Writ in the Superior Court dated July 22, 1935.

The action was reported by *Williams*, J., without decision, on a case stated.

*J. Wiggin*, (*J. A. Plummer & F. W. Campbell* with him,) for the plaintiffs.

*H. S. Davis*, (*T. M. Banks, Jr.*, with him,) for the defendant.

DOLAN, J. This is an action of contract to recover rent, taxes, insurance premiums and other items claimed to be due under a written lease. The case was submitted in the Superior Court upon an agreement as to all the material facts in the form of a case stated, and was reported without decision below (G. L. [Ter. Ed.] c. 231, § 111).

The material facts presented by the agreed statement of facts are as follows: On February 1, 1923, the plaintiffs' predecessors who were the then owners of premises numbered 210–212 Boylston Street in Boston leased the premises to the defendant corporation which at that time was known as L. P. Hollander Company. The defendant occupied the premises for the retail sale of merchandise. In carrying on its business the defendant also occupied premises of other owners on each side of the premises here in question under leases considered respectively in *Talbot* v. *Rednalloh Co.* 283 Mass. 225, and *Hamlen* v. *Rednalloh Co.* 291 Mass. 119.

On March 30, 1929, a new corporation, L. P. Hollander Company Inc., purchased the business and took assignments of the leases covering the three buildings occupied until that time by the defendant lessee. Before consenting to the assignment here in question the then owners of the premises required the establishment of a trust fund of $50,000 for the benefit of themselves and their successors, which trust fund of $50,000 was established by Theodore C. Hollander who was then and has since been president and treasurer of the defendant corporation, the owner of substantially all its capital stock, and in control of its management and policies. These facts as to Theodore C. Hollander's ownership of stock were not known to the then

owners of the premises until February 19, 1932, though they knew that he controlled the defendant corporation and directed its policies.

At the time of the assignment, the defendant lessee, the assignee, and Theodore C. Hollander entered into an agreement providing for the indemnification of the defendant for defaults of the assignee.

On June 4, 1929, the assignee obtained consent from the lessors to make and shortly thereafter did make extensive alterations in the premises. Before the lessors gave their assent they required an agreement by the trustee of the trust set up as described above. Certain other alterations, not expressly consented to by the lessors, were also made but the lessors knew they were being made and interposed no objections thereto. The defendant was not a party to these agreements and had no knowledge of the alterations unless it was chargeable with notice in the circumstances referred to hereinafter.

L. P. Hollander Company Inc. occupied the premises from the time of the assignment of the lease until February 19, 1932, when it was adjudicated a bankrupt. Up to that time it had paid rent, taxes and other items due under the lease. From February 19, 1932, to April 8, 1932, the receiver and the trustee in bankruptcy successively occupied the premises and paid for use and occupation. After April 8, 1932, the plaintiffs received from the trust fund rent and other sums accruing until the trust fund became substantially exhausted. Certain schedules annexed to the plaintiffs' declaration correctly set forth rent and other items which had accrued prior to the date of the writ in this action. Each of the instruments mentioned above is appended to the agreed facts as an exhibit.

The defendant resists recovery on the grounds that it did not expressly covenant to pay rent, and hence was discharged by the valid assignment of the lease; and, in any event, that it was released from its obligations under the lease by the agreement between the lessors and the assignee whereunder permission was granted to the assignee to make substantial alterations in the premises which were in fact

made, and by the making of other alterations with the knowledge of the lessors and without objection on their part, the said agreement and alterations having been made without the knowledge or consent of the defendant.

As we think that the defendant's latter contentions are decisive of the case, in their consideration, we assume without deciding that under the language of the lease read as a whole, the defendant was bound by express covenants to perform its terms including the payment of the rent for the period of the lease; and that the defendant was not relieved of its obligations under the lease merely by its valid assignment. See *Wall* v. *Hinds*, 4 Gray, 256, 266; *Newcomb* v. *Presbrey*, 8 Met. 406, 410; *Gibbs* v. *Thayer*, 6 Cush. 30, 32; *Pittsfield & North Adams Railroad* v. *Boston & Albany Railroad*, 260 Mass. 390, 396; *Samuels* v. *Ottinger*, 169 Cal. 209, 213, 214; *Consumers' Ice Co.* v. *Wm. H. H. Bixler & Co.* 84 Md. 437, 449, 450; *Huston* v. *Graham*, 169 Wash. 521, 524, 525; *Bussman* v. *Ganster*, 72 Penn. St. 285; *Hallett* v. *Wylie*, 3 Johns. (N. Y.) 44.

The question whether the lessee is freed from obligations arising under the lease after the assignment is a question of fact. Compare *Golding* v. *Brennan*, 183 Mass. 286, 289. Facts such as the assignment itself, the assent of the lessors thereto, the assumption of the covenants of the lease by the assignee, the collection of rent from the assignee by the lessors, and even the procuring by the assignee of a surety for his performance are not sufficient either separately or taken together to show a release of the lessee. *Pfaff* v. *Golden*, 126 Mass. 402, 403. *Greenleaf* v. *Allen*, 127 Mass. 248, 253. *Hamlen* v. *Rednalloh Co.* 291 Mass. 119, 122.

In determining whether the facts are sufficient to show a release of the lessee there are two possible approaches. Apart from showing an express release, the lessee may show that the lessor accepted a surrender of the old lease, or he may show that the lessor or the assignee with the consent of the lessor and without consent of the lessee materially varied the obligations under the lease so as to discharge the lessee on principles analogous to those of suretyship.

As to surrender, it has been said that while the lessee may be relieved of obligations under a lease upon assignment thereof, the intent of the lessor to release the lessee must be clearly shown. *Carlton Chambers Co.* v. *Trask,* 261 Mass. 264, 267. A surrender by operation of law may result from the acts of the lessor and lessee. *Talbot* v. *Whipple,* 14 Allen, 177, 180. Such a surrender by operation of law may result where the lessor enters into an agreement with the assignee containing materially different provisions from the old lease or amounting to a new lease. *T. A. D. Jones Co.* v. *Winchester Repeating Arms Co.* 55 Fed. (2d) 944, 948, affirmed, 61 Fed. (2d) 774, certiorari denied *sub nomine Southeastern Investment Co.* v. *Tobler,* 288 U. S. 609.

Similarly, on principles of suretyship, the lessee may be discharged by an agreement between the lessor and the assignee, the effect of which is to vary the lessee's obligations under the original lease, since the lessee for many purposes is considered, after an assignment, to be a surety for the assignee's performance of the obligations of the lease. *Hamlen* v. *Rednalloh Co.* 291 Mass. 119, 124. *T. A. D. Jones Co.* v. *Winchester Repeating Arms Co.* 55 Fed. (2d) 944, 948.

Regardless of the precise analysis of the theories by which the lessee may be relieved of liability by an assignment, the principle is clear that an agreement between the lessor and the assignee materially varying the terms of the original lease will on one theory or another result in the termination of the lessee's covenant to pay rent. *Fifty Associates* v. *Grace,* 125 Mass. 161, 163. *T. A. D. Jones Co.* v. *Winchester Repeating Arms Co.* 55 Fed. (2d) 944, at page 948. *Kaskel* v. *Hollander,* 68 Fed. (2d) 265, 267. *Fairchild* v. *Cahn,* 120 Cal. App. 418, 420. *Keeley* v. *Beenblossom,* 183 Iowa, 861, 863, 864. *Seeburger* v. *Cohen,* 215 Iowa, 1088, 1092. Compare *Essex Lunch, Inc.* v. *Boston Lunch Co.* 229 Mass. 557, 559, 560. The lessee is not discharged, however, by variations which enure to his benefit. *Eastman* v. *Nelson,* 8 Alaska, 548, 555, 556. *Gates* v. *Kehlet,* 43 Cal. App. 738, 741. *Wade* v. *March,* 39 Ohio

App. 111, 116. Compare *In re United Cigar Stores Co.* 85
Fed. (2d) 134. Nor is the lessee discharged by agree-
ments between lessor and assignee which may increase the
liability of the lessee, but which are permitted by the
terms of the original lease, to the benefits of which the
assignee is entitled. *Wall* v. *Hinds,* 4 Gray, 256, 266, 267.

In the present case the lease given the defendant by the
plaintiffs' predecessors provided that "no alterations or
additions shall be made, during the term aforesaid in or
to the same (except in the way of constructing and altering
ordinary interior partitions and conveniences) but, subject
to the requirements of the building department of the City
of Boston and of the Boston Board of Fire Underwriters,
the lessee may cut doors through the walls between the
building on the leased premises and the buildings adjoin-
ing to the east and west, without weakening the same,
provided that on each occasion the consent of the lessors
be first obtained in writing . . . ."

"On or about June 4, 1929, L. P. Hollander Company
Inc. notified the then owners of the leased premises that
it contemplated making alterations in the building on the
premises and it sought the owners' consent thereto. It
submitted to the owners a plan of said alterations for the
making of which it requested the owners' consent. These
proposed alterations consisted of the making of three new
openings, with double fire doors into the adjoining build-
ings on the fourth floor; and the construction of a new
façade of black granite, with bronze trimming for the show
window, on the Boylston Street end of the ground floor of
the leased premises and extending across the buildings on
both sides, namely the Talbot and Hamlen buildings re-
ferred to in . . . this agreement, the granite in this façade
to consist of rectangular slabs approximately two and a
half feet wide and varying from three to five feet in length,
and four inches in thickness; these slabs were to be placed
in front of the leased premises under the show window to
the sidewalk, over the window to the lower sills of the
windows of the second story, and up each side of the win-
dow to the lower sills of the windows of the second story;

the original brownstone front of the building to be cut into to a depth of about four inches up the two piers on either side of the show window (each pier being about two feet in width), above the show window, and wherever else necessary to accommodate the granite slabs; the whole façade to give the three adjoining buildings, in respect to the first floor on Boylston Street, the appearance of a single building, the façade in front of the leased premises to be supported by new steel supports placed in the basement of the building." Before consenting to these alterations the then owners of the premises, in consideration for granting such consent, required the assignee to execute and to procure Theodore C. Hollander and the trustee under the deed of trust, to which reference has already been made, to execute an agreement that upon the termination of the lease the Hollander corporation "will" turn over to the lessors the premises restored in proper tenantable condition, ready for occupancy by one or more tenants with such entrances, windows, partitions, stairs, elevators, sprinkler system, plumbing, lighting and heating facilities "all as the said Lessors may specify in writing" and to their satisfaction. The agreement was entered into and the contemplated alterations made without the consent of the defendant, and without notice to it, unless it must be said that it was chargeable with notice because "Theodore C. Hollander was at the time of the agreement and during the time the alterations were being made a director of L. P. Hollander Company Inc. and had an office in the premises and observed that alterations were being made, but attended no meetings and took no part in the affairs of the said corporation." The defendant made no protest against the execution of the agreement or the making of the alterations. We think that even if it had knowledge it was not obliged to object or protest, and that as it did not consent it was not bound. *Greeley* v. *Dow,* 2 Met. 176, 178. *Schwartz* v. *American Surety Co.* 231 Mass. 490, 493. *Taborsak* v. *Massachusetts Bonding & Ins. Co.* 289 Mass. 8, 12, 13. See also *Lambert* v. *Shetler,* 71 Iowa, 463, 464; *American Iron & Steel Manuf. Co.* v.

*Beall*, 101 Md. 423, 427; *A. B. Klise Lumber Co.* v. *Enkema*, 148 Minn. 5, 6, 7; *Thompson* v. *Metropolitan Building Co.* 95 Wash. 546, 550. The assignee without the knowledge or consent of the lessee also made many interior alterations, dismantled and removed a power plant from the central building, and rewired the building, with the removal to one of the adjoining buildings of the central controls for all the electricity in the premises covered by the lease in question. These alterations having been made with the knowledge of the lessors, who interposed no objection thereto, must be taken to have been consented to by them. *Pfister & Vogel Co.* v. *Fitzpatrick Shoe Co.* 197 Mass. 277, 278. The defendant's consent to such alterations was not obtained.

We think that the agreement for substantial alterations entered into between the lessors and the assignee, the subsequent alterations in the building made in accordance therewith, and the other alterations made with the knowledge of and without objection by the lessors, materially varied the obligations of the defendant upon its covenants in the lease. The alterations cannot be said to have been permitted by the lease, nor to enure to the defendant's benefit. We are of opinion that the lessors' agreement with the assignee, the alterations made in consequence, as well as those made with the knowledge of and without objection by the lessors, operated to discharge the defendant from its obligations under the covenants of the lease. The entry, therefore, will be

*Judgment for the defendant.*