NET REALTY HOLDING TRUST vs. RICHARD A. GIANNINI
& another.

Norfolk.   November 13, 1981. — March 10, 1982.

Present: GREANEY, ROSE, & PERRETTA, JJ.

*Landlord and Tenant*, Assignment of lease, Rent, Termination of lessee's
obligations, Surrender. *Surety. Assignment. Contract*, Novation.

In an action by a landlord against a tenant and his assignee of a lease to
recover rent and costs of alterations to certain premises claimed to be
due under the lease, the tenant was not entitled to summary judgment
on the ground that an amendment to extend the term of the lease, exe-
cuted by the landlord and the tenant's assignee, constituted either the
landlord's acceptance of a surrender of the tenant's lease in favor of
one with the assignee or the tenant's release from any suretyship rela-
tionship he may have had with the assignee by reason of his assignment
of the lease where the documents and the parties' affidavits left open
the factual issue whether the landlord, in consenting to the assignment
and in executing the amendment to the lease, intended to release and
discharge the tenant from his obligations under the lease.  [276-278]

CIVIL ACTION commenced in the Brookline Division of the
District Court Department on February 27, 1979.

On removal to the Superior Court Department, the case
was heard by *Brogna*, J., on a motion for summary judgment.

*Richard A. Kaufman* (*Louis C. Zicht* with him) for the
plaintiff.

*Robert D. Kozol* for Richard A. Giannini.

PERRETTA, J.   The plaintiff landlord, Net, brought an ac-
tion against the defendant tenant, Giannini, and his assignee
of the lease, Upper Cut, Ltd., to recover rent and costs of
alterations to the premises claimed to be due under the
lease.  Upper Cut failed to appear and to answer and was
defaulted.[1]  Giannini claimed to be free of all liability to

---

[1] Prior to the commencement of this suit, Net brought an action in sum-
mary process against Upper Cut and obtained judgment for possession

Net by reason of an amendment to his lease by Net and Upper Cut. It is his contention that the amendment constitutes either Net's acceptance of a surrender of his lease in favor of one with Upper Cut or his release from any suretyship relationship he may have had with Upper Cut by reason of his assignment of the lease to it. A judgment was entered in Giannini's favor pursuant to his motion for summary judgment, Mass.R.Civ.P. 56, 365 Mass. 824 (1974), and Net appeals. We reverse.

"In determining whether the facts are sufficient to show a release of the lessee there are two possible approaches. Apart from showing an express release, the lessee may show that the lessor accepted a surrender of the old lease, or he may show that the lessor or the assignee with the consent of the lessor and without consent of the lessee materially varied the obligations under the lease so as to discharge the lessee on principles analogous to those of suretyship." *Walker* v. *Rednalloh Co.*, 299 Mass. 591, 594 (1938). We recite the facts as they appear from the parties' pleadings, affidavits, and exhibits. On May 22, 1969, Giannini entered into a lease with Net's predecessor in title by which Giannini became the lessee of premises located in Brookline for a term of five years commencing on August 1, 1969. This term was extended to July 31, 1979, by an amendment, the first, to the lease. The lease provided that the "[t]enant shall not assign this Lease . . . without, on each occasion, obtaining the prior written consent of the Landlord . . . . Tenant shall remain primarily liable upon all the terms, covenants and conditions hereof and will bind any assignee . . . to the terms and provisions of this Lease."

In May of 1977, with a little over two years left on his lease, Giannini asked Net to consent to an assignment of the lease to Upper Cut. However, Upper Cut would not accept an assignment unless the term of the lease could be extended for an additional three years, giving it the right to occupy

and for rent due. Upper Cut vacated the premises but has not otherwise satisfied the judgment against it.

the premises until July 31, 1982. On June 10, 1977, Giannini and Upper Cut signed a document labelled "Assignment of Lease and Assumption Agreement" whereby Giannini "assign[ed] and transfer[red] all his rights, title and interest as lessee" of the premises to Upper Cut who "assume[d] all rights, duties, obligations and responsibilities under said lease." By its own terms, the assignment was contingent upon Net's consent, which was given, and "a fully executed lease amendment for three years, commencing August 1, 1979 through July 31, 1982, between Net Realty Holding Trust and the Upper Cut, Ltd., which amendment shall transfer the security deposit now held by Net . . ., directly to . . . Upper Cut . . . upon the satisfactory fulfillment of the terms of the lease." That same day, June 10, Giannini vacated and Upper Cut took possession of the premises.

On August 8, 1977, Net and Upper Cut executed a document designated as "Second Amendment of Lease" which provided that "[w]hereas" Net's predecessor in title and Giannini had entered into a lease agreement on May 27, 1969, "and whereas" Net and Giannini had amended the lease on March 8, 1974, and "[w]hereas, simultaneous with this Second Amendment of Lease," Giannini and Upper Cut "have entered into an Assumption and Assignment of Lease Agreement," and "[w]hereas, the parties agree to amend the terms of said Lease," then "[e]ffective June 10, 1977, Article II of said Lease shall be amended to provide that the term shall end on the last day of July, 1982."[2]

It appears from the summary process pleadings (see n.1), that Upper Cut soon fell behind in its rent payments to Net, and that on March 31, 1978, Net made written demand on Giannini for the money owed to it by Upper Cut. Net obtained a judgment against Upper Cut for possession and for

---

[2] In his affidavit, Giannini denies that the assignment and second amendment were simultaneously executed, and he states that he neither saw the second amendment nor knew of its contents. Net's president claims by affidavit that Giannini "was fully aware of this condition and approved of the transaction."

rent in May. Net also made alterations and repairs to the property so that it could find a new tenant, which it was able to do as of February 1, 1979. In its present action, Net relies on its lease with Giannini and seeks satisfaction of the judgment against Upper Cut for rent, payment of the rent due from the date of that judgment through February 1, 1979, and the cost of the repairs and alterations to the premises.[3]

1. *Release From the Suretyship Relationship.*

"The mere assignment of a lease with the consent of the lessor who takes a covenant from the assignee to pay rent or thereafter collects rent from the assignee does not relieve the original lessee from his contract to pay rent expressed in the covenants of the lease." *Hamlen* v. *Rednalloh Co.,* 291 Mass. 119, 122 (1935). *Connolly* v. *Rogers,* 292 Mass. 140, 143 (1935). Rather, the effect of the assignment was, "as between assignee and lessee, the creation of the relationship of principal and surety as to the debts for rent thereafter coming due under the lease." *Hamlen* v. *Rednalloh Co.,* 291 Mass. at 124. See also *Walker* v. *Rednalloh Co.,* 299 Mass. at 594. There is nothing that appears in the various documents or from the circumstances of their making which can be construed as defeating a suretyship relationship between Giannini and Upper Cut as matter of law. Suretyship defenses against the landlord can be waived by a tenant, and the present lease expressly provides that, in the event Net consents to an assignment of the lease, Giannini "shall remain primarily liable" on the lease. See Schwartz, Lease Drafting in Massachusetts § 9.9, at 433 & n.10 (1961).

Giannini claims that he was released from the relationship with Upper Cut by reason of the second amendment which materially varied the term of the lease, without his consent, as demonstrated by the language of the assignment. Under the first amendment to the lease, Giannini was bound

---

[3] The lease provides that the "[t]enant also agrees (i) to indemnify and save Landlord harmless from and against . . . the cost of putting the Premises in good order or preparing the same for rental."

to Net until July 31, 1979. Giannini contends that by the plain and unambiguous wording of his assignment, it was contingent upon a second amendment extending the period of the tenancy by three years, "*commencing* on August 1, 1979," (emphasis supplied), the day after his tenancy with Net expired. Net and Upper Cut, however, amended the lease, "[e]ffective June 10, 1977," thereby materially varying the expiration date of the lease to July 31, 1982. Giannini claims that because he became an uncompensated surety by reason of the assignment, that document must be construed in his favor. See *Bayer & Mingolla Constr. Co.* v. *Deschenes,* 348 Mass. 594, 598 (1965), and authorities there cited.

According to Giannini's reading of the assignment, he became Upper Cut's surety, but only through July 31 of 1979, rather than of 1982. However, because Net was able to mitigate its damages as of February 1, 1979, it only looks to Giannini for payment of rent that was owed during the period to which Giannini claims his surety obligation was limited. Thus, even if the second amendment was a departure from the terms of the assignment and the lease, it has not caused him a loss sufficient to discharge him from the surety relationship as matter of law. Cf. *Lynn Five Cents Sav. Bank* v. *Portnoy,* 306 Mass. 436, 440 (1940) ("The mortgagor, as surety, is released only to the extent that the value of the security has been lessened by the conduct of the mortgagee [allowing a grant of an easement over the mortgaged premises]. . . . This we think is in accord with the general rule that a surety is released only to the extent that the security has been impaired by the action of the creditor").

2. *Surrender of the Lease.*

Giannini seeks to avoid altogether a suretyship relationship with Upper Cut by claiming that the second amendment to the lease is a new five-year lease between Net and Upper Cut. As such, his argument continues, the second amendment constitutes a novation or surrender, discharging him from all obligation to Net as of its effective date, June

10, 1977. The express language of the lease and of the second amendment to it, as well as the affidavit of Net's president (see note 2, *supra*), all directly refutes this claim. Whether a novation occurred "is to be determined by the intent as expressed by words and acts of all the parties in the light of the circumstances." *Tudor Press, Inc.* v. *University Distrib. Co.*, 292 Mass. 339, 341 (1935). So too with a surrender: "A surrender by operation of law *may* result from the acts of the lessor and lessee. *Talbot* v. *Whipple*, 14 Allen 177, 180 [1867]. Such a surrender by operation of law *may* result where the lessor enters into an agreement with the assignee containing materially different provisions from the old lease or amounting to a new lease." (Emphases supplied.) *Walker* v. *Rednalloh Co.*, 299 Mass. at 595. See also Stavisky, Landlord and Tenant Law § 842, at 538 (1977) ("[S]urrender may be accomplished by act and operation of law as well as by express agreement. Intent of the lessor to relieve the lessee must be clearly shown").

3. *Conclusion.*

The documents and the parties' affidavits leave open the factual dispute whether Net, in consenting to the assignment and in executing the second amendment to the lease, intended to release and discharge Giannini from his obligations under the lease. See *Tudor Press, Inc.* v. *University Distrib. Co.*, 292 Mass. at 340-341; *Walker* v. *Rednalloh Co.*, 299 Mass. at 594. It follows from what we have said that it was error to allow Giannini's motion for summary judgment.

The order allowing the motion for summary judgment and the judgment are reversed.

*So ordered.*