JEDCO DEVELOPMENT CO., INC., a
North Dakota Corporation, Plaintiff
and Appellant,

v.

Joe BERTSCH, Defendant, Appellee,
Third-party Plaintiff, and
Cross-plaintiff,

v.

Vern OWAN, Charles Owan, Jr., and
Roger DeVries, Defendants and
Cross-defendants,

v.

Chuck HAMERS and Leo H. Dobler,
Third-party Defendants.

Civ. No. 890036.

Supreme Court of North Dakota.

June 6, 1989.

Lolita G. Hartl Romanick (argued) and Russel G. Robinson, of McGee, Hankla, Backes & Wheeler, P.C., Minot, for plaintiff and appellant.

Charles L. Neff, of Bjella Neff Rathert Wahl & Eiken, Williston, for defendant, appellee, third-party plaintiff and cross-plaintiff.

VANDE WALLE, Justice.

This is an appeal from a summary judgment of the district court for Williams County dismissing the claim of Jedco Development Co. that Bertsch remained liable under a lease agreement entered between the two parties after Bertsch assigned the lease to another party. We reverse and remand for further proceedings.

In 1982, Bertsch, Roger DeVries, Charles Owan, Jr., and Vernon Owan (hereinafter referred to as Bertsch), signed a lease with Jedco, agreeing to lease for five years a building owned by Jedco. The lease agreement incorporated a handwritten memorandum which specified numerous details the parties agreed to. Jedco was to remodel the building at an estimated cost of $35,000. Rental payments were $2,475 per month with a three percent increase in the fourth year and an additional three percent

increase in the fifth year. In the event remodeling costs exceeded $35,000, rent was to be adjusted to $2,475 plus 17½ percent of the amount by which the remodeling costs exceeded $35,000. Bertsch also had the right under the lease agreement to purchase the property.

The original lease between Jedco and Bertsch required Jedco's written consent to any assignment of the lease. In 1983 Jedco agreed in writing to an assignment of the lease wherein Chuck Hamers and Leo Dobler agreed to "accept and assume all of the terms, covenants and conditions in said Lease contained to be kept and performed by the Lessees, from and after the date of this Agreement." As a condition of its consent to the assignment, however, Jedco required that the following changes in the lease be made:

"(1) The provision in the hand written agreement to add rent at 17½% of any additional costs over $35,000 is to be applied.

"(2) The figure used is calculated as follows: $11,177.00 × .17½/12 = $163.00 per month or added to $2,475.00 per month for rent of $2,638.00 per month. The option to purchase at a fixed price is deleted. All other conditions remain the same."

Bertsch assigned their interest in the lease to Hamers and Dobler. Hamers and Dobler subsequently defaulted on the lease payments. Jedco brought this action against Bertsch, asserting that although Bertsch had assigned the lease to another party, Bertsch remained liable under the lease to make the rental payments for the remainder of the five years.

The trial court determined that there were no material facts in dispute. It held that the undisputed facts establish there had been a novation and Jedco and Bertsch agreed that Hamers and Dobler would be substituted for Bertsch in the lease agreement. It therefore concluded that summary judgment in favor of Bertsch was appropriate.

On appeal, Jedco argues that summary judgment was inappropriate because, viewing all evidence in the light most favorable to Jedco, there are triable issues of fact, i.e., whether there was a novation and whether Bertsch was released from liability when they assigned the lease to Hamers and Dobler.[1] Jedco claims that where a lessee has expressly agreed to pay rent, he remains liable to pay the rent even if he assigns the lease to another party.

Bertsch argues that when an assignee is required by the lessor to incur additional obligations not part of the original lease, the lessee is released from his obligation to pay rent. In this case, Bertsch counters, because the lease agreement was changed materially and Jedco consented to the changes, as a matter of law there was a substitution of parties and a novation. The material changes, they assert, include the increase in rent and the deletion of the option to buy the property.

Summary judgment is a procedural device available for disposing of a controversy without a trial if there is no dispute as to the material facts or the inferences to be drawn from the undisputed facts or whenever only a question of law is involved. *Benjamin v. Benjamin*, 439 N.W.2d 527 (N.D.1989). On appeal, the judgment of the trial court will stand only if there is solely a question of law or if, viewing the evidence in a light most favorable to the party against whom summary judgment was granted, there is no dispute over the material facts or inferences to be drawn from the undisputed facts. *Id.*

"Novation" is defined in the North Dakota Century Code as "the substitution of a new obligation for an existing one." Sec. 9–13–08, N.D.C.C. Section 9–13–10 provides:

"Novation is made by the substitution of:

"1. A new obligation between the same parties with intent to extinguish the old obligation;

---

**1.** Whether there was a novation and a release, both turn upon the intent of the parties. Sec. 9–13–10, N.D.C.C. Therefore, our analysis fo-

cuses upon the issue of the intent of the parties rather than the legal theories used as a vehicle to present the issue of intent.

"2. A new debtor in the place of the old one with intent to release the latter; or

"3. A new creditor in place of the old one with intent to transfer the rights of the latter to the former."

■ Novation is created by contract and is therefore subject to all rules governing contracts in general. Sec. 9–13–09, N.D. C.C. The basic rule for interpreting a contract is set forth in Section 9–07–03 which provides that "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting ..." If the contract has been reduced to writing, the intent of the parties must be determined from the writing alone if possible. Sec. 9–07–04, N.D.C.C. If the intent of the parties cannot be ascertained from the writing alone, however, "the court may look at the subsequent conduct of the parties to help determine the intention of the parties and the construction the parties put upon the agreement." *Holman v. State*, 438 N.W. 2d 534, 538 (N.D.1989).

■ It appears that ordinarily a lessee is not relieved of his obligation to pay rent merely because he has assigned the lease with the lessor's consent. See, e.g., *Bayou Acceptance Corp. v. Superior Hydraulics, Inc.*, 446 So.2d 558 (La.Ct.App.1984); *Cane River Shopping Center v. Monsour*, 443 So.2d 602 (La.Ct.App.1983); *Shooman v. McAughan*, 404 S.W.2d 665 (Tex.Ct.App. 1966); rather, the lessor must intend to release the lessee:

"The intention of the obligor that the existing debt should be discharged by the new obligation must be concurred in by both debtor and creditor. The point in every case, then, is, whether the parties intend by their arrangement to extinguish the old debt or obligation and rely entirely on the new, or whether they intend to keep the old alive and merely accept the new as further security, and this question of intention must be decided from all the circumstances." 58 Am. Jur.2d *Novation* § 20. [Footnotes omitted.]

See also *Tony and Leo, Inc. v. United States Fidelity and Guaranty Co.*, 281 N.W.2d 862, 865 (Minn.1979) ["Where an assignor principal seeks to prove a novation in order to be discharged from a binding contract to indemnify its surety, a clearly defined expression of consent by the surety to release the assignor principal must be shown" (citing 6 A. Corbin, *Corbin on Contracts* § 1301) ].

■ The intent to create a novation may be shown not only by the terms of the agreement itself, but also by the character of the transaction and by the facts and circumstances surrounding the transaction. *Cane River Shopping Center v. Monsour, supra.* Here, there are only two arguable changes that resulted from the assignment. The first is that Bertsch was to pay $2,475 per month and Hamers and Dobler were to pay $2,638 per month. The second change was that the right to purchase the property was deleted.

It is obvious that Hamers and Dobler were required to pay more rent. It is not so obvious, however, that the increase was due to a change in the lease terms. In the original lease, the $2,475 per month rental payment was subject to adjustment if Jedco incurred expenses of more than $35,000 in preparing the building for Bertsch's occupancy. Ruvold Jacobsen, president of Jedco, filed an affidavit in which he stated:

"Before the time of the assignment all the work on the property had not been completed to a point where the computation of increased rent could be made under the original lease. That computation was able to be made just before the time of the assignment, so the increase under the assignment was contemplated to be paid under the terms of the original lease. Therefore, the 'change' was really no change at all."

Further, according to the assignment, the rent paid by Hamers and Dobler was computed by taking $2,475 plus 17½ percent of $11,177 and dividing that figure by 12. Neither party has pointed out to us exactly how the $11,177 figure was arrived at. But Jacobsen's affidavit indicates that approximately $50,000 was spent on improvements to the property. This, along with the fact that rent was to be increased on a

percentage basis for any cost over $35,000, may be the reason the $11,177 was used in determining the amount that rent was to be increased. That is, costs of improvements may have exceeded $35,000 by $11,177 and therefore rent may have been adjusted accordingly as per the original lease agreement.

The lease provided that the lessee had the right to purchase the property. That provision was deleted at the request of Jedco when the lease was assigned to Hamers and Dobler. The question then arises: Did Jedco, by removing the right to purchase the property, intend to create a new contract with Hamers and Dobler thereby releasing Bertsch from the lease contract?

In *Groner v. Dryer*, 256 A.2d 559 (D.C. 1969), a lessor brought an action to recover rents from a lessee who assigned the lease to another party. The assignee exercised an option to renew the lease for an additional five years; however, the rent was substantially increased. When a dispute arose between the lessor and assignee as to who was going to pay for painting the exterior of the building, the assignee withheld from the rental payment an amount equal to the cost expended on the painting. The lessor brought suit against the assignor claiming the assignment did not relieve the assignor of his obligations under the lease. The assignee stated in his deposition that the only change in the terms of the lease that he knew of was that the rent was increased. The trial court apparently relied upon that testimony in granting summary judgment in favor of the lessor.

On appeal, the Court of Appeals for the District of Columbia stated that "a lessor and assignee may, by entering into a direct leasing arrangement or by varying materially the terms of the original lease, establish a new tenancy relationship, thereby terminating the old." 256 A.2d at 563. In reversing summary judgment and remanding for further proceedings, the court noted that the lessor's own exhibits indicated that, prior to the renewal, negotiations took place between lessor and assignee concerning such issues as maintenance, insurance, and the increase in rent.

■ Thus, if the lessor and assignee materially change the terms of the lease as it existed between the lessor and assignor, a new tenancy relationship is established and the assignor is released from his obligations under the original lease. This rule of law is qualified, however, in that:

"The lessee is not discharged, however, by variations which inure to his benefit. Nor is the lessee discharged by agreements between lessor and assignee which may increase the liability of the lessee, but which are permitted by the terms of the original lease, to the benefits of which the assignee is entitled." [2] *Walker v. Rednalloh Co.*, 299 Mass. 591, 595–596, 13 N.E.2d 394, 397 (1938).

Bertsch quotes Annotation, *Lessee as surety for rent after assignment; and effect of lessor's dealings (other than consent to assignment or mere acceptance of rent from assignee) to release lessee*, 99 A.L.R. 1238 (1935), for the proposition that a "lessee is released from his obligation to pay rent, where the lessor, as a condition to his consent to assignment of the lease, requires the assignee to take upon himself other and additional obligations not embodied in or made a part of the lease as it had existed between the original lessor and lessee" [citing *Keeley v. Beenblossom*, 183 Iowa 861, 167 N.W. 638 (1918)]. In *Keeley*, the plaintiff lessor consented to the lessee's assigning the lease but as a condition of doing so required the assignee to agree to other terms in addition to those contained in the lease made between the lessor and lessee. The additional terms "limited the use to which the building could be put to the keeping of a restaurant therein; prohibited loud talking, singing, and playing of musical instruments therein;

**2.** For example:

"Where a lease contains an option in the lessee's favor, to renew or extend the term, which is binding on the lessor upon the lessee's election to exercise it, the lessee remains liable, under his covenant to pay rent, for rent during the extension or renewal, although he has assigned the lease and the option has been exercised by his assignee. Since in such case the original term and the renewal or extended term are in legal effect a unit, no distinction can be drawn as to the lessee's liability based on the cessation of the original rental period." 49 Am.Jur.2d *Landlord and Tenant* § 443.

prohibited the display of goods on the sidewalk and the placing of signs and paintings on said building, and other stipulations— none of which had been made a part of the original contract." 167 N.W. at 638.

*Keeley* is distinguishable from the present case. First, that case was not disposed of by summary judgment as was done here. Second, the restrictions placed upon the assignment by the lessor in *Keeley* obviously severely limited the rights of the assignee as compared to the rights the assignor had. Here, there was only one right taken away: the right to purchase the property at a fixed price. From the limited record, we cannot say that as a matter of law the deletion of the right to purchase at a fixed price was a material variation of the lease terms.

■ We have previously stated that "whether or not there has been a novation is a question of fact if the evidence is such that reasonable persons can draw more than one conclusion." *Butler v. Roberts*, 437 N.W.2d 839 (N.D.1989) [quoting *Herb Hill Ins., Inc. v. Radtke*, 380 N.W.2d 651, 654 (N.D.1986)]. Jedco's assent to the assignment, without further explanation, may have been nothing more than Jedco's assent to be bound to Hamers and Dobler; or it may have been an assent to receive substituted return performance without releasing Bertsch; or it may have been intended as a novation thereby releasing Bertsch of further liability. See 4 A. Corbin, *Corbin on Contracts* § 870 (1951).

We cannot determine as a matter of law that the assignment was intended to be a novation which resulted in a release of Bertsch's liability under the lease. Because there are different inferences to be drawn from the undisputed facts, reasonable persons could draw more than one conclusion in this case. Therefore, the summary judgment is reversed and the case is remanded for further proceedings.

ERICKSTAD, C.J., and GIERKE, MESCHKE and LEVINE, JJ., concur.