TRI–CONTINENTAL LEASING COR-
PORATION, Plaintiff, Appellant
and Cross–Appellee,

v.

G. Jane GUNTER, as Personal Represent-
ative of the Estate of Larry A. Gunter,
Deceased, Defendant, Appellee and
Cross–Appellant.

TRI–CONTINENTAL LEASING COR-
PORATION, Plaintiff, Appellant
and Cross–Appellee,

v.

Richard GUNTER, Defendant, Appellee
and Cross–Appellant.

Civ. Nos. 900369, 900370.

Supreme Court of North Dakota.

June 25, 1991.

McGee, Hankla, Backes & Wheeler, Ltd.,
Minot, for plaintiff, appellant and cross-
appellee; argued by Mark V. Larson.

Zuger, Kirmis, Bolinske & Smith, Bis-
marck, for defendant, appellee and cross-
appellant, G. Jane Gunter; argued by
Kathleen K. Davison. Appearance by Rob-
ert V. Bolinske.

Pringle & Herigstad, P.C., Minot, for de-
fendant, appellee and cross-appellant, Rich-
ard Gunter; argued by James E. Nostdahl.

GIERKE, Justice.

Tri–Continental Leasing Corporation has
appealed from a district court judgment
dismissing its claims against Richard Gun-
ter and G. Jane Gunter, as Personal Repre-
sentative of the Estate of Larry A. Gunter,
Deceased, and from a judgment denying its
motion for amended findings of fact or a
new trial. The Gunters cross-appealed.
We affirm.

■ After securing the financial backing
of Larry Gunter, Forrest Charlesworth
formed Gunter Oil Well Service, Inc.
(GWS), in 1980 to engage in the oil well
service business. The initial shareholders
were Charlesworth, Larry Gunter, and
David Brink. Richard Gunter later became
a shareholder. Larry and Richard Gunter
did not actively participate in managing
GWS.

GWS acquired a number of workover
rigs, including two that it acquired through
lease-purchase transactions with Tri–Conti-
nental. Eventually, GWS had difficulty
making lease payments and the Tri–Conti-
nental leases were modified in 1984 to ex-
tend the terms and reduce the payments.
In 1985, Larry and Richard Gunter as-
signed their GWS stock to Charlesworth.
Throughout 1985, Charlesworth sought a
modification in the payments due under the
leases. On January 3, 1986, Tri–Continen-
tal, GWS, Larry Gunter and Richard Gun-
ter executed a Consolidation Agreement,
consolidating the two previous equipment
leases into one. The consolidation agree-
ment recited that the balance due Tri–Con-
tinental under the two leases was $447,-
798.00 and that one of the rigs had been
destroyed, for which Tri–Continental antici-

pated receiving insurance proceeds of $80,-522.56. The agreement provided in part:

"5. GWS agrees to pay to Tri–Con under this Consolidation Agreement, the aggregate sum of THREE HUNDRED THIRTY–SEVEN THOUSAND, SEVEN HUNDRED TWENTY–NINE and 40/100 DOLLARS ($337,729.40) in seventy-nine (79) equal and consecutive monthly payments of FIVE THOUSAND NINE HUNDRED NINE and 12/100 DOLLARS ($5,909.12) each, commencing January 1, 1986. . . .

\*     \*     \*     \*     \*     \*

"10. Gunters hereby unconditionally guarantee the prompt payment of all payments due Tri–Con pursuant to the Consolidated Lease, provided, however, in the event GWS makes twelve (12) timely monthly rental payments to Tri-Con pursuant to this Consolidated Lease Agreement, then the Gunters obligations hereunder shall terminate."

Tri–Continental received from GWS one payment of $5,909.12, two checks for $3,000 each, several "payments of different amounts, 2,000, 3,000, $1500" and, since November 1986, "GWS has basically been making $1500 a month payments."

In 1987, Tri–Continental sued G. Jane Gunter, as Personal Representative of the Estate of Larry A. Gunter, Deceased, for $474,008.84 pursuant to the guaranty provision in the consolidation agreement. In 1989, Tri–Continental filed a similar action against Richard Gunter. The district court ordered the two cases joined for a bench trial.

The parties filed cross-motions for summary judgment. The district court denied the Gunters' motion and partially granted Tri–Continental's motion for summary judgment. After trial, the district court made the following findings of fact:

"XVII.

"GWS sublet the rig covered by the Consolidation Agreement to Sanders Oilfield Construction, apparently sometime in 1986 or 1987.

"XVIII.

"Plaintiff was aware of the sublease to Sanders, but never raised any objection to it.

\*     \*     \*     \*     \*     \*

"XXIII.

"The Gunters' willingness to participate in and guarantee leases to GWS was based in large part on their business and personal relationships with Forrest Charlesworth, the operating member of GWS."

The trial court concluded:

"IX.

"By its informed acquiescence and implicit consent, plaintiff permitted GWS to sublease the rig covered by the Consolidation Agreement, thereby altering the original obligation of GWS to act as the operator of the rig.

"X.

"The sublease was a change that a careful and prudent person undertaking the risk of guaranteeing GWS's performance of the Consolidation Agreement would have regarded as substantially increasing the chances of loss; it was therefore a material change to the Gunters' detriment.

"XI.

"Pursuant to section 22–01–15 NDCC, the original obligation of the principal having been altered, the guarantors are exonerated.

"XII.

"Defendants are entitled to judgment of dismissal of plaintiffs claims herein, and for their costs and disbursements."

Upon dismissal of its lawsuit, Tri–Continental moved for amended findings of fact or a new trial. The trial court denied the motion, and Tri–Continental appealed, raising as issues whether the trial court erred in (1) determining that a sublease was created, which materially altered the obli-

gation of GWS and exonerated the guarantors; (2) failing to respect a partial summary judgment issued in the case; and (3) in denying its motion for amended findings of fact or a new trial. G. Jane Gunter cross-appealed to preserve defenses not considered by the trial court. Richard Gunter cross-appealed to challenge the denial of his request for a jury trial.

Section 22–01–15, N.D.C.C., provides:

> *"When guarantor exonerated.*—A guarantor is exonerated, except insofar as he may be indemnified by the principal, if, by any act of the creditor without the consent of the guarantor:
>
> 1. The original obligation of the principal is altered in any respect; or
>
> 2. The remedies or rights of the creditor against the principal in respect thereto are impaired or suspended in any manner."

Patrick Filippelli, a Tri–Continental vice president, testified that GWS subleased the rig to "Sanders Oil in Colorado"; that "Sanders is operating the rig"; and that he "spoke to Sanders the latter part of '89 indicating that we may have to work something out on that, reduce something to writing, but that never came about." Forrest Charlesworth stated in a deposition admitted into evidence that he subleased the rig to Sanders Oilfield Construction for $1,500 per month; that GWS pays Tri–Continental that $1,500 per month; and that "GWS doesn't generate any income except the fifteen hundred dollars a month, and it pays it out to Tri–Continental."

Thus, the evidence clearly supports the trial court's findings of a sublease with Tri–Continental's knowledge and implicit consent. The evidence shows that GWS owed Tri–Continental $5,909.12 per month, that GWS leased the rig to Sanders for $1,500 per month, that GWS had no other income with which to make payments to Tri–Continental, that GWS paid Tri–Continental $1,500 per month, that Sanders was operating the subleased rig, and that the sublease was entered into without notice to or consent of the Gunters. We agree with the trial court that, under the circumstances of this case, such a sublease altered the original obligation of GWS and that it was a material change exonerating the Gunters under § 22–01–15, N.D.C.C.

Tri–Continental has argued that the sublease was not a material change. Although we agree with the trial court's conclusion that the sublease was a material alteration, under this court's caselaw construing § 22–01–15, N.D.C.C., materiality of an alteration is irrelevant; a guarantor is exonerated "if, by any act of the creditor without the consent of the guarantor: 1. The original obligation of the principal is *altered in any respect*" (emphasis added).

> "Under this statute [§ 6668, C.L. 1913 (codified without substantive change as § 22–01–15, N.D.C.C.)] the matter of prejudice by, or materiality of, the change is not open to inquiry, because the statute provides that if the obligation is altered 'in any respect' the guarantor, and likewise the surety, is exonerated.

> "It is therefore not necessary to inquire into nor to determine to what extent, if at all, the surety or guarantor in this case was injured or prejudiced by the alteration made in the principal contract."

*Liberty Nat'l Bank & Trust Co. v. Dvorak,* 199 N.W.2d 414, 418 (N.D.1972) [quoting *Atlas Assurance Co., Limited of London, England v. Lawrence,* 34 F.2d 401, 405 (8th Cir.1929) ]. See also *Wallwork Lease and Rental Co., Inc. v. Decker,* 336 N.W.2d 356, 358–59 (N.D.1983) ("If, however, the creditor alters 'in any respect' the original obligation of the principal without the consent of the guarantor, the guarantor is deemed 'exonerated' " unless the guarantor signs a guaranty waiving the "right to object to subsequent alterations" and the "right to claim exoneration under § 22–01–15, NDCC"); *AMF, Inc. v. Fredericks,* 212 N.W.2d 834, 836 (N.D.1973) ("[T]he case law of this State does not require that the guarantor be injured by a change in the obligation of the principal in order to exonerate the guarantor—it requires only that the obligation of the princi-

**440**

pal be changed 'in any respect'.").[1] We conclude that GWS's subleasing of the workover rig to another with Tri–Continental's knowledge and implicit consent for a monthly rental payment well below the monthly lease payment it owed Tri–Continental when it had no other income altered its obligation and exonerated the Gunters as guarantors.

In a pretrial order granting partial summary judgment, the trial court stated: "It appears that the only remaining issue for trial is the nature, content and significance of any transactions, communications and agreements if any, between plaintiff and GWS after January 3, 1986, regarding reduced or partial payments." Tri–Continental contends that the trial court erred in failing "to respect the partial summary judgment issued in the case." Tri–Continental argued in its brief:

"As a result of the court's ruling on the partial summary judgment motion and its statements at the commencement of the trial, no evidence was presented at trial regarding the sublease arrangement by either the Plaintiff or the Defendants.... As a result of the parties' understanding of the court's ruling, it is clear the sublease arrangement was not necessarily considered part of the evidentiary issues. Defendant G. Jane Gunter did make a brief allusion to that, but developed no evidence regarding the sublease issue. The court did not request information on that issue.

"... Therefore, to determine that a sublease was a primary grounds for releasing the parties in this matter clearly indicates that the court did not afford an opportunity to litigate the issue upon which it made its ultimate decision."

Evidence was presented at trial regarding the sublease arrangement. Thus, the record clearly indicates that the trial court did afford the parties an opportunity to litigate the issue of the sublease. Patrick Filippelli's testimony about the sublease was given without objection at the trial, and Forrest Charlesworth's statements about the sublease in a deposition was also admitted into evidence at the trial without objection. We find no basis upon which to conclude that the trial court failed to respect the partial summary judgment entered in the case. In addition, Tri–Continental did not raise this issue in the trial court. Issues not raised in the trial court cannot be raised for the first time on appeal. *E.g., City of West Fargo v. Maring,* 458 N.W.2d 318 (N.D.1990). A party who files a motion for a new trial is limited on appeal to a review of the grounds presented to the trial court on the motion. *Andrews v. O'Hearn,* 387 N.W.2d 716 (N.D.1986).

Tri–Continental contends that the trial court erred in denying its motion for amendment of the findings of fact or a new trial. The trial court ruled: "A review of the evidence presented at trial indicates that the evidence neither supports plaintiff's requested findings, nor does it support plaintiff's arguments for a new trail (sic)." Some of the findings sought by Tri–Continental were not supported by the evidence. Other findings sought by Tri–Continental, even if supported by the evidence, would not cause a different result. We conclude that the findings of fact made by the trial court are not clearly erroneous and that the trial court did not err in failing to make the findings sought by Tri–Continental. We further conclude that the trial court did not abuse its discretion in denying Tri–Continental's alternative motion for a new trial.

Affirmed.

ERICKSTAD, C.J., VANDE WALLE and LEVINE, JJ., and VERNON R. PEDERSON, Surrogate Justice, concur.

VERNON R. PEDERSON, Surrogate Justice, sitting in place of MESCHKE, J., disqualified.

---

1. In *AMF,* the exonerating alterations were made well after the principal's payment defaults occurred. The lease alterations were made in 1970. The suit was to recover from the guarantors delinquent annual payments for the years 1965 through 1969.