Harold **ROSENBERG** and Gladys E. Rosenberg, Plaintiffs and Appellants,

v.

**SON, INC.** and Mary Pratt, Defendants and Appellees.

Civ. No. 920072.

Supreme Court of North Dakota.

Oct. 6, 1992.

Brink, Sobolik, Severson, Vroom & Malm, PA, Hallock, Minn., for plaintiffs and appellants; argued by Ronald C. Vroom.

Olson, Sturdevant and Burns, Minot, for defendant and appellee Son, Inc.; argued by Richard P. Olson.

Moosbrugger, Ohlsen, Dvorak & Carter, Grand Forks, for defendant and appellee Mary Pratt; argued by Shaun G. Jamison, Sr. Law Student; appearance by Shirley A. Dvorak.

ERICKSTAD, Chief Justice.

Harold Rosenberg and Gladys E. Rosenberg (Rosenbergs) appeal two district court decisions granting summary judgment in favor of Son, Inc., and Mary Pratt. We reverse and remand for further proceedings.

On February 8, 1980, Pratt entered into a contract for the sale of a business with the Rosenbergs, agreeing to purchase the Rosenbergs' Dairy Queen located in the City Center Mall in Grand Forks. The terms of the sales contract for the franchise, inventory, and equipment were a purchase price totaling $62,000, a $10,000 down payment, and $52,000 due in quarterly payments at 10 percent interest over a

15–year–period. The sales contract also contained a provision denying the buyer a right to prepayment for the first five years of the contract.

Mary Pratt assigned her rights and delegated her duties under the sales contract to Son, Inc., on October 1, 1982.[1] The assignment agreement contained a "Consent To Assignment" clause which was signed by the Rosenbergs on October 14, 1982.[2] The assignment agreement also included a "save harmless" clause in which Son, Inc., promised to indemnify Pratt.[3] Subsequent to this transaction, Mary Pratt moved to Arizona and had no further knowledge of, or involvement with, the Dairy Queen business. Also following the assignment, the Dairy Queen was moved from the City Center Mall to the corner of DeMers and North Fifth Street in Grand Forks.

The sales contract was then assigned by Son, Inc., to Merit, Corporation (Merit) on June 1, 1984. This assignment agreement did not contain a consent clause for the Rosenbergs to sign. However, the Rosenbergs had knowledge of the assignment and apparently acquiesced. They accepted a large prepayment from Merit, reducing the principal balance due to $25,000. Following this assignment, Merit pledged the inventory and equipment of the Dairy Queen as collateral for a loan from Valley Bank and Trust of Grand Forks.

Payments from Merit to the Rosenbergs continued until June of 1988, at which time the payments ceased, leaving an unpaid principal balance of $17,326.24 plus interest. The Rosenbergs attempted collection of the balance from Merit, but the collection efforts were precluded when Merit filed bankruptcy. The business assets pledged as collateral for the loan from Valley Bank and Trust of Grand Forks were repossessed. The Rosenbergs brought this action for collection of the outstanding debt against Son, Inc., and Mary Pratt.

The trial court denied a summary judgment motion by the Rosenbergs, stating that there were questions of fact remaining which could not be resolved by a summary judgment motion.[4] Several months later, Pratt and Son, Inc., renewed their summary judgment motions. The trial court

---

1. The term "assign" is normally associated with a party's rights under a contract (*i.e.,* getting paid, receiving goods); whereas the term "delegate" is associated with a party's duties under a contract (*i.e.,* making a payment, performing a service). However, it is a common practice to call the assigning of rights and delegating of duties merely an "assignment of contract." This is especially true when language such as "all right, title and interest" is used. This was the exact language contained in the assignment agreement between Pratt and Son, Inc., and also in the assignment agreement between Son, Inc., and Merit, Corporation (to be discussed later).

 "An assignment of 'the contract' or of 'all my rights under the contract' or an assignment in similar general terms is an assignment of rights and unless the language or the circumstances (as in an assignment for security) indicate the contrary, it is a delegation of performance of the duties of the assignor and its acceptance by the assignee constitutes a promise by him to perform those duties. This promise is enforceable by either the assignor or the other party to the original contract." Section 41–02–17(4), N.D.C.C. *See also* 67 Am. Jur.2d *Sales* § 383 at 650. Thus, the assignment agreements in this case not only assigned rights, they also delegated duties to the assignees.

2. The language of the consent clause was very brief and direct. In full, it read: "The undersigned, Harold Rosenberg and Gladys E. Rosenberg, sellers in the above described Contract of Sale, do hereby consent to the above assignment."

3. The indemnification clause reads as follows:
 "And the said party of the second part [Son, Inc.] covenants and agrees to and with the said party of the first part [Pratt] that the said party of the second part will pay the said purchase price and will observe and perform all the terms, conditions and stipulations in the said agreement mentioned which are thereunder by the said party of the first part to be observed and performed, and will save harmless and keep indemnified the said party of the first part against all claims, demands and actions by reason of the failure of the said party of the second part to observe and perform the said agreement."

4. In its memorandum decision and order denying the Rosenbergs' motion for summary judgment, the trial court concluded that: "Since novation, guarant[y] and surety obligations all involve questions of fact which cannot be resolved by summary judgment motion," granting the motion would be inappropriate. In the same memorandum decision and order, the trial court also denied Pratt's motion for indemnification from Son, Inc., based on a motion for summary judgment.

granted Pratt's motion on December 2, 1991, and granted Son, Inc.'s motion on January 10, 1992, dismissing the Rosenbergs' claims against both parties. The trial court based its decision on the case of *Tri–Continental Leasing Corp. v. Gunter*, 472 N.W.2d 437 (N.D.1991). It concluded that once Pratt assigned her contract she became a guarantor. Under *Tri–Continental* and North Dakota guaranty law, any alteration in the original obligation exonerates a guarantor.[5] The trial court found that moving the business, the second assignment to Merit, and pledging business assets as collateral, all without Pratt's knowledge, constituted alterations in the underlying obligation. Therefore, because it determined that Pratt was a guarantor on the contract, she was exonerated by the trial court.[6] We disagree with the trial court's analysis and decision to grant summary judgment.

It is a well-established principle in the law of contracts that a contracting party cannot escape its liability on the contract by merely assigning its duties and rights under the contract to a third party. This principle is codified in Section 41–02–17(1), N.D.C.C.:

> "*Delegation of performance—Assignment of rights.*
>
> 1. A party may perform his duty through a delegate unless otherwise agreed or unless the other party has a substantial interest in having his original promisor perform or control the acts required by the contract. *No delegation of performance relieves the party delegating of any duty to perform or any liability for breach* [Emphasis added.]."

Professor Corbin explained this point succinctly in his treatise on contract law.

"An assignment is an expression of intention by the assignor that his duty shall immediately pass to the assignee. Many a debtor wishes that by such an expression he could get rid of his debts. Any debtor can express such an intention, but it is not operative to produce such a hoped-for result. It does not cause society to relax its compulsion against him and direct it toward the assignee as his substitute. In spite of such an 'assignment,' the debtor's duty remains absolutely unchanged. The performance required by a duty can often be delegated; but by such a delegation the duty itself is not escaped."

4 Corbin on Contracts § 866 at 452.

This rule of law applies to all categories of contracts, including contracts for the sale or lease of real property, service contracts, and contracts for the sale of goods, which is present in the facts of this case.

"In the case of a contract for the sale of goods, the assignment and delegation may be by the buyer as well as by the seller. The buyer's assignment of his right to the goods and his delegation of the duty to pay the price are both effective; but he himself remains bound to pay the price just as before. If the assignee contracts with the assignor to pay the price, the seller can maintain suit for the price against the assignee also, as a creditor beneficiary of the assumption contract; *the seller has merely obtained a new and additional security.*"

*Id.* at 454–455 (emphasis added) (footnotes omitted).

█ Thus, when Pratt entered into the "assignment agreement" with Son, Inc., a simple assignment alone was insufficient to release her from any further liability on the contract. *See Jedco Development Co.,*

---

5. This principle is codified in Section 22–01–15, N.D.C.C., which says:

> "*When guarantor exonerated.* A guarantor is exonerated, except insofar as he may be indemnified by the principal, if, by any act of the creditor without the consent of the guarantor:
>
> 1. The original obligation of the principal is altered in any respect; or

> 2. The remedies or rights of the creditor against the principal in respect thereto are impaired or suspended in any manner."

6. The trial court granted Son, Inc.'s motion for summary judgment because the Rosenbergs' claim against Son, Inc., was based on "the theory of indemnity alone and that there is no independent claim against Son, Inc. Since the claim against Pratt has been dismissed, there would be no indemnity claim against Son, Inc."

*Inc. v. Bertsch,* 441 N.W.2d 664 (N.D.1989) (lessee is not relieved of this obligation to pay rent merely because he had assigned lease with lessor's consent absent a novation); *Brooks v. Hayes,* 133 Wis.2d 228, 395 N.W.2d 167 (1986) (party delegating duties under contract is not relieved of responsibility for fulfilling an obligation or liability in the event of a breach). *See also* Restatement (Second) of Contracts § 318; 6A C.J.S. *Assignments* § 97 at 753; 6 Am. Jur.2d *Assignments* § 110; 67 Am.Jur.2d *Sales* § 383 at 649.

 It is not, however, a legal impossibility for a contracting party to rid itself of an obligation under a contract. It may seek the approval of the other original party for release, and substitute a new party in its place. In such an instance, the transaction is no longer called an assignment; instead, it is called a novation.[7] If a novation occurs in this manner, it must be clear from the terms of the agreement that a novation is intended by all parties involved. "An obligor is discharged by the substitution of a new obligor only if the contract so provides or if the obligee makes a binding manifestation of assent, forming a novation." Restatement (Second) of Contracts § 318 cmt. d. Therefore, both original parties to the contract must intend and mutually assent to the discharge of the obligor from any further liability on the original contract. *See Schmitt v. Berwick Town-*

*ship,* 488 N.W.2d 398 (N.D.1992); *Butler v. Roberts,* 437 N.W.2d 839 (N.D.1989); *Jedco Development Co., Inc. v. Bertsch,* 441 N.W.2d 664; *First Nat. Bank v. Meyer Enterprises,* 427 N.W.2d 328 (N.D.1988); *Herb Hill Ins., Inc. v. Radtke,* 380 N.W.2d 651 (N.D.1986); *North Dakota Public Serv. Commission v. Valley Farmers Bean Association,* 365 N.W.2d 528 (N.D. 1985).

It is evident from the express language of the assignment agreement between Pratt and Son, Inc., that only an assignment was intended, not a novation.[8] The agreement made no mention of discharging Pratt from any further liability on the contract. To the contrary, the latter part of the agreement contained an indemnity clause holding Pratt harmless in the event of a breach by Son, Inc. Thus, it is apparent that Pratt contemplated being held ultimately responsible for performance of the obligation.

Furthermore, the agreement was between Pratt and Son, Inc.; they were the parties signing the agreement, not the Rosenbergs. An agreement between Pratt and Son, Inc., cannot unilaterally affect the Rosenbergs' rights under the contract.

 As mentioned earlier, the Rosenbergs did sign a consent to the assignment at the bottom of the agreement. However, by merely consenting to the assignment,

---

7. There are three statutes applicable to novation in the present case. The first statute defines the concept of novation.
 "*Novation defined.* Novation is the substitution of a new obligation for an existing one." Section 9–13–08, N.D.C.C. The second statute explains how a novation is created.
 "*Novation—Created by contract.* Novation is made by contract and is subject to all the rules concerning contracts in general." Section 9–13–09, N.D.C.C. The third and final statute points out the various methods for making a novation.
 "*How novation made.* Novation is made by the substitution of:
 1. A new obligation between the same parties with intent to extinguish the old obligation;
 2. A new debtor in the place of the old one with intent to release the latter; or
 3. A new creditor in place of the old one with intent to transfer the rights of the latter to the former."

Section 9–13–10, N.D.C.C.

8. The agreement itself was titled "ASSIGNMENT OF CONTRACT FOR SALE." Following the standard introduction of the parties involved (Pratt and Son, Inc.), it read:
 "That the said party of the first part [Pratt], in consideration of the sum of One Dollar ($1.00) and other valuable consideration to her paid by the said party of the second part [Son, Inc.], the receipt whereof is hereby acknowledged, does hereby assign, transfer and set over unto the said party of the second part the above recited agreement or Contract of Sale and all the right, title and interest of the said party of the first part to the business above described, to have and to hold the same unto the said party of the second part, its successors and assigns, forever, subject, nevertheless, to the terms, conditions and stipulations in the said agreement contained. [Indemnification clause set forth in footnote 3.]"

the Rosenbergs did not consent to a discharge of the principal obligor—Pratt. Nothing in the language of the consent clause supports such an allegation. A creditor is free to consent to an assignment without releasing the original obligor.

"Where the obligee consents to the delegation, the consent itself does not release the obligor from liability for breach of contract. More than the obligee's consent to a delegation of performance is needed to release the obligor from liability for breach of contract. For the obligor to be released from liability, the obligee must agree to the release. If there is an agreement between the obligor, obligee and a third party by which the third party agrees to be substituted for the obligor and the obligee assents thereto, the obligor is released from liability and the third person takes the place of the obligor. Such an agreement is known as a novation."

*Brooks v. Hayes*, 395 N.W.2d at 174. *See also Jedco Development Co., Inc. v. Bertsch*, 441 N.W.2d at 666 ("a lessee is not relieved of his obligation to pay rent merely because he has assigned the lease with the lessor's consent … rather, the lessor must intend to release the lessee"). Thus, the express language of the agreement and intent of the parties at the time the assignment was made did not contemplate a novation by releasing Pratt and substituting Son, Inc., in her stead.

Without thoroughly acknowledging the above principles and their importance, the trial court concluded that once Pratt assigned her contract she became a guarantor on the contract. The trial court proceeded to apply North Dakota guaranty statutes and guaranty case law to Pratt, and exonerated her under that authority. We do not believe that the trial court appropriately applied the law.

■ As stressed above, a party assigning its rights and delegating its duties is still a party to the original contract. An

assignment will not extinguish the relationship and obligations between the two original contracting parties. However, an assignment does result in the assignor having a surety relationship, albeit involuntary, *with the assignee*, but not with the other original contracting party.

"A common instance of involuntary suretyship, *at least as between the principal and surety themselves*, occurs where one party to a contract [Son, Inc.], as a part of the agreement, assumes an indebtedness owing by the other [Pratt] to a third person [the Rosenbergs], the one assuming the indebtedness becoming the principal [Son, Inc.], and the former debtor a surety [Pratt]."

72 C.J.S. *Principal and Surety* § 35 (emphasis added).[9] Therefore, in the present facts, Pratt enjoyed a surety position as to Son, Inc., but remained a principal on the contract with the Rosenbergs.

■ The inquiry as to Pratt's liability does not end at this juncture. Pursuant to guaranty law, the trial court released Pratt from any liability on the contract due to the changes or alterations which took place following her assignment to Son, Inc. While it is true that Pratt cannot be forced to answer on the contract irrespective of events occurring subsequent to her assignment, it is also true that she cannot be exonerated for *every* type of alteration or change that may develop.

"The buyer can assign his right to the goods or land and can delegate performance of his duty to pay the price. He himself remains bound as before by his duty to pay that price. But observe that he remains bound 'as before'; the assignee and the seller cannot, by agreement or by waiver, make it the assignor's duty to pay a different price or on different conditions. If the seller is willing to make such a change, he must trust to the assignee alone. It has been held that, if a tender of delivery by a certain time is a condition precedent to the buyer's duty

---

**9.** At oral argument, Pratt's counsel tried to convince this Court that the "principal" in the above quote was the Rosenbergs and that the "surety" was Pratt. We agree with counsel that Pratt is the surety, but we do not agree that by assigning the contract and nothing more, Pratt became a surety in the relationship between the Rosenbergs and Pratt.

to pay, the assignee of the buyer has no power to waive this condition, and substantial delay by the seller will prevent his getting judgment against the assignor for the price. If the assignee has contracted to pay the price, his waiver of the condition will be effective in a suit against him, *but it will not be allowed to prejudice the position of the assignor,* who now occupies substantially the position of surety."

4 Corbin on Contracts § 866 at 458–459 (emphasis added) (footnotes omitted).

The trial court decided pursuant to guaranty statutes, Section 22–01–15, N.D.C.C., and case law, *Tri–Continental Leasing Corp. v. Gunter,* 472 N.W.2d 437, that any alteration in the underlying obligation resulted in a release of Pratt on the contract. It appears that an assignor occupies a much different position from that of a guarantor; not every type of alteration is sufficient to warrant discharge of the assignor. As suggested by Professor Corbin in the language highlighted above, the alteration must "prejudice the position of the assignor." 4 Corbin on Contracts § 866 at 459.

"Accordingly, unless the other contracting party has consented to release him, the assignor remains bound by his obligations under the contract and is liable to the other party if the assignee defaults,.... However, the assignor is responsible only for the obligation which he originally contracted to assume, and the assignee cannot, without the assignor's knowledge, *increase the burden.*"

6A C.J.S. *Assignments* § 97 at 753–754 (emphasis added) (footnotes omitted).

Further authority for this principle is found in *Jedco,* 441 N.W.2d 664. The facts in *Jedco* involved an assignment of the lease of a building, to which the lessor consented. Various changes occurred following the assignment of the lease. When the assignee defaulted, the lessor sued the assignor for uncollected rental payments. This Court reversed the summary judgment of the trial court, which judgment was in favor of the assignor, and remanded for further proceedings. Justice Vande-Walle, speaking for the Court, said:

"Thus, if the lessor and assignee materially change the terms of the lease as it existed between the lessor and assignor, a new tenancy relationship is established and the assignor is released from his obligations under the original lease. This rule of law is qualified, however, in that:

'The [assignor] is not discharged, however, by *variations which inure to his benefit.* Nor is the [assignor] discharged by agreements between lessor and assignee which may increase the liability of the [assignor], but which are permitted by the terms of the original lease, to the benefits of which the assignee is entitled.' *Walker v. Rednalloh Co.,* 299 Mass. 591, 595–596, 13 N.E.2d 394, 397 (1938)."

*Jedco,* 441 N.W.2d at 667 (emphasis added) (footnote omitted). *See also Boswell v. Lyon,* 401 N.E.2d 735 (Ind.1980) (subsequent assignments do not relieve the assignor of any liability on the contract because it is not a change in the time or manner of payment).

■ If the changes in the obligation prejudicially affect the assignor, a new agreement has been formed between the assignee and the other original contracting party. More concisely, a novation has occurred and the assignor's original obligation has been discharged. This is consistent with our previous decisions and statutory authority. *See* Section 9–13–09, N.D.C.C. Although we have previously determined that the terms of the assignment agreement between Pratt and Son, Inc., did not contemplate a novation, there are additional methods of making a novation besides doing so in the express terms of an agreement. In *Jedco,* we held that:

"The intent to create a novation may be shown not only by the terms of the agreement itself, but also by the character of the transaction and by the facts and circumstances surrounding the transaction. *Cane River Shopping Cen-*

*ter v. Monsour,* [443 So.2d 602 (La.Ct. App.1983) ]."

441 N.W.2d at 666.

The question of whether or not there has been a novation is a question of fact, as decided by this Court in *Herb Hill Ins., Inc. v. Radtke,* 380 N.W.2d 651.

> "[T]he question of whether or not there has been a novation is a question of fact if the evidence is such that reasonable persons can draw more than one conclusion. *Navine v. Peltier,* 48 Wis.2d 588, 180 N.W.2d 613, 616 (1970); *Hyde v. Hyde,* 78 S.D. 176, 99 N.W.2d 788, 791–92 (1959)."

*Id.* at 654. *See also Schmitt v. Berwick Township,* 488 N.W.2d 398; *Jedco v. Bertsch,* 441 N.W.2d 664; *Butler v. Roberts,* 437 N.W.2d 839; *First Nat. Bank v. Meyer Enterprises,* 427 N.W.2d 328.

The trial court should not have granted summary judgment on the basis of guaranty law. First of all, guaranty law does not apply to contract assignments without more. Further, there are questions of fact remaining as to the result of the changes in the contract. These issues were not addressed by the trial court. In reversing and remanding in *Jedco,* we said:

> "We cannot determine as a matter of law that the assignment was intended to be a novation which resulted in a release of [the assignor's] liability under the lease. Because there are different inferences to be drawn from the undisputed facts, reasonable persons could draw more than one conclusion in this case. Therefore, the summary judgment is reversed and the case is remanded for further proceedings."

441 N.W.2d at 668. We must do the same in this case. Thus, we reverse the summary judgment and remand for further proceedings.

JOHNSON, VANDE WALLE and MESCHKE, JJ., and DONALD L. JORGENSEN, District Judge, concur.

DONALD L. JORGENSEN, District Judge, sitting in place of LEVINE, J., disqualified.