1998 ND 189

**AG SERVICES OF AMERICA, INC.,**
Plaintiff and Appellant,

v.

**MIDWEST INVESTMENT LIMITED PARTNERSHIP,** Leo J. Beauclair, Ernest N. Godfread, Roger F. Kennedy, William F. McCullough, Donald H. Hastings, R.C. Bellin, Raymond S. Gruby, James J. Moses, O.M. Hillesland and Norbert J. O'Keefe, Defendants and Appellees.

Civil No. 980107.

Supreme Court of North Dakota.

Oct. 30, 1998.

Pamela J. Hermes, of Vogel, Weir, Bye, Hunke & McCormick, Ltd., Fargo, for plaintiff and appellant.

James L. Norris (argued), Bismarck, and James P. Rausch, of Rausch Law Office, Bismarck, for defendants and appellees.

MARING, Justice.

[¶ 1] Ag Services of America, Inc. (Ag Services) has appealed a summary judgment dismissing its action to enforce a loan guaranty of Midwest Investment Limited Partnership, Leo J. Beauclair, Ernest N. Godfread, Roger F. Kennedy, William F. McCullough, Donald H. Hastings, R.C. Bellin, Raymond S. Gruby, James J. Moses, O.M. Hillesland, and Norbert J. O'Keefe (Midwest). We conclude the guarantors were not exonerated, and Ag Services is entitled to a judgment in its favor. We reverse and remand for entry of judgment in favor of Ag Services.

[¶ 2] Ag Services loaned money to Roger and Monte Hoggarth to finance their farming operations. Midwest guarantied payment of the loans. In 1993, Ag Services sued Hoggarths for nonpayment.

[¶ 3] In May 1993, Ag Services, Midwest, Hoggarths, and Kenneth W. Hulstein executed a work-out agreement providing: (1) Hoggarths' obligation to Ag Services was $489,-938.76 as of April 20, 1993; (2) Hoggarths would give Ag Services crop proceeds for debt reduction; (3) Hoggarths would surrender their equipment and vehicles to Ag Services and lease them back, with the lease maturing on November 1, 1993; and (4) Hoggarths' entire indebtedness was due and payable on November 15, 1993. The agreement also provided:

7.

As consideration for and inducement for all parties to execute this Agreement, Ag Services intends to enter into a financing arrangement with Monte Hoggarth and Roger Hoggarth for the 1993 growing crop year.... However, the parties hereby agree that the maximum credit available to the Hoggarths shall not exceed $150,000 for 1993....

The advances made by Ag Services pursuant to the financing arrangement with Monte Hoggarth and Roger Hoggarth will not include expenses incurred by Ag Services for attorneys' fees, postage, appraisals, grain measuring, or other similar expenses.

....

9.

Midwest Investment Limited Partnership and all of the previous personal guarantors ... hereby agree to execute and deliver their guaranty of collection.... The 1992 loan balance is approximately $100,000. The 1993 advances are budgeted at $150,000. The equipment lease payment is $38,587.50. The maximum exposure under the guaranties will be reduced from $300,000 to $150,000. A copy of the guaranty is attached hereto as Exhibit "E".

[¶ 4] In May 1993, the individual Midwest partners executed a guaranty of collection of Hoggarths' obligation to Ag Services. The guaranty recited that the "carry over debt for 1992" owed by Hoggarths to Ag Services was $100,000, payable on November 15, 1993. The guaranty further recited:

2. AG SERVICES shall provide to the HOGGARTHS a further and additional loan or line of credit ... for the year of 1993, which loan or line of credit shall be in the sum of One Hundred Fifty Thousand and no/100 Dollars ($150,000.00). This loan or line of credit shall be evidenced by a promissory note to be paid on or by the 15th day of November, 1993, in the amount of the loan or actual advances made under the line of credit arrangement....

The guaranty provided:

The undersigned guarantors do hereby, jointly and severally, agree to pay the obligation owed by the HOGGARTHS as above described but this guaranty shall not exceed the total amount of $150,000.00 which is the maximum exposure of the guarantors herein, IT BEING UNDERSTOOD AND PROVIDED herein that the joint and several liability of the guarantors will not exceed this amount regardless of the actual unpaid obligation owed by the HOGGARTHS at the time of maturity of the debt, or the fact that interest may continue to accrue on the obligation or the lender herein incurs costs or expenses, including attorney's fees, in any action to collect the amount owed as against the

HOGGARTHS, or either of them, or the guarantors herein.

. . . .

The undersigned guarantors acknowledge upon the execution of this instrument it shall be in full force and effect providing that the lender, above-named, does honor its obligations under the loan agreement with the HOGGARTHS to be executed contemporaneously herein.... Further, the liability of the undersigned shall not be affected or impaired by the existence from time to time of indebtedness from the HOGGARTHS to the lender in excess of the limit of liability of this Guaranty.

[¶ 5] Ag Services advanced over $150,000 to Hoggarths for operating expenses in 1993. Hoggarths did not repay the 1993 loan and Ag Services obtained money judgments against them for $150,000. Ag Services was unable to recover under the judgments against Hoggarths. Ag Services sued Midwest to recover $150,000 pursuant to the 1993 guaranty of the 1993 Hoggarth loan obligation. Midwest answered and sought dismissal of the complaint, alleging, in part:

However, the Plaintiff did violate the terms and conditions of such work-out agreement by taking action specifically prohibited by the memorandum of agreement and that such action was taken without the knowledge or consent of the guarantors and hence the Defendants herein, as the guarantors, are exonerated and discharged from an[y] liability or obligations that would otherwise have existed under the terms of the contract of guaranty.

[¶ 6] Ag Services moved for summary judgment. Ag Services supported the motion with an affidavit of Henry C. Jungling, its chief operating officer. In his affidavit, Jungling summarized the 1993 agreement and asserted that "during the 1993 crop season, Ag Services, in fact, advanced in excess of $160,000.00 to the Hoggarths to meet actual operating expenses," and further said that Ag Services had charged a loan application fee of $400.00, overnight mail expenses of $74.48, and legal fees of $270.00 to the Hoggarths' 1993 operating loan account.

[¶ 7] Midwest opposed Ag Services' motion for summary judgment and filed a cross-motion for summary judgment dismissing Ag Services' complaint. Midwest supported its response and cross-motion with affidavits of Leo J. Beauclair, one of the guarantors, and James L. Norris, an attorney who represented Hoggarths. Beauclair's affidavit stated in part: (1) "In the Spring of 1993 Ag Services began taking formal action against the Hoggarths due to the delinquent nature of the accounts;" (2) "the various parties ... entered into a series of negotiations aimed at avoiding litigation and restructuring the debt obligation of the Hoggarths;" (3) the settlement efforts resulted in Ag Services foregoing its rights of foreclosure and repossession and "resulted in an arrangement for the giving of additional operating capital to the Hoggarths for the 1993 crop year;" and (4) Midwest's guaranty "was modified so as to be restricted to the maximum amount of $150,000.00 and that it be a 'guaranty of collection' rather than a guaranty of 'payment'." Beauclair's affidavit continued:

In the course of the negotiations, the parties reached agreements on various issues and conditions. One of the conditions demanded by the Defendants and the Hoggarths was that Ag Services terminate its practice of charging the borrowers for Ag Services' legal fee bills or administrative costs.... Hence, Ag Services, by the execution of the May, 1993, agreement did agree to comply with the provisions therein contained, including the provision in numbered paragraph 7 that provided:

... The advances made by Ag Services pursuant to the financing arrangement with Monte Hoggarth and Roger Hoggarth will not include expenses incurred by Ag Services for attorneys' fees, postage, appraisals, grain measuring, or other similar expenses....

This provision was clear and unambiguous and was specifically included in this agreement as a condition imposed upon AG Services.... Simply stated, Ag Services promised not to continue these practices but as the record shows, it continued in the practice long after the May, 1993, agreement was signed and apparently did so knowingly and willingly.

Norris stated in his December 16, 1997, affidavit:

> Furthermore, in the course of the undersigned's representation of the Hoggarths, the undersigned became aware that included in the charges allegedly owed by the Hoggarths were certain charges assessed by Ag Services for Ag Services' legal fees, mailing costs, grain measuring charges and the like, which charges were supposedly prohibited and precluded via the May, 1993 work-out agreement.
>
> . . . .
>
> This affiant does state that in one of the telephone conferences ... Mr. Brakke [counsel for Ag Services] acknowledged that such charges were in fact made by Ag Services and would be contrary to the work-out agreement but he attempted to dismiss the importance of wrongful charges by pointing to the minimal dollar amount of such items when compared to the total debt.

[¶ 8] The trial court determined Ag Services "unilaterally assessed service charges and attorneys fees against the Hoggarths and thus altered their obligation to it." Relying on N.D.C.C. § 22–01–15 and *Tri–Continental Leasing Corp. v. Gunter*, 472 N.W.2d 437 (N.D.1991), the court granted Midwest's motion for summary judgment dismissing Ag Services' complaint. Ag Services appealed.

[¶ 9] Summary judgment is a procedural device for prompt disposition of a controversy without trial if either party is entitled to judgment as a matter of law, if there is no dispute about either the material facts or the inferences to be drawn from undisputed facts, or if resolving factual disputes would not alter the result. *Perry Center, Inc. v. Heitkamp*, 1998 ND 78, ¶ 12, 576 N.W.2d 505. "In considering a motion for summary judgment, a court must view the evidence in the light most favorable to the party opposing the motion, who must be given the benefit of all favorable inferences which reasonably can be drawn from the evidence." *Mougey Farms v. Kaspari*, 1998 ND 118, ¶ 12, 579 N.W.2d 583. "Disputes of fact become questions of law if reasonable persons can draw only one conclusion from the evidence." *Id.* In reviewing a summary judgment, we view the evidence in the light most favorable to the non-moving party and determine if the trial court properly granted summary judgment as a matter of law. *Tuhy v. Schlabsz*, 1998 ND 21, ¶ 5, 574 N.W.2d 823.

[¶ 10] Ag Services contends the trial court erred in determining its unilateral assessment of service charges and attorney fees altered Hoggarths' obligation and exonerated the guarantors. Section 22–01–15, N.D.C.C., provides:

> A guarantor is exonerated, except insofar as he may be indemnified by the principal, if, by any act of the creditor without the consent of the guarantor:
>
> 1. The original obligation of the principal is altered in any respect; or
>
> 2. The remedies or rights of the creditor against the principal in respect thereto are impaired or suspended in any manner.

Alteration of a contract "is a process wherein the parties make '[a] change in the provisions of a contract.' Black's Law Dictionary 71 (5th ed.1979)." *Biteler's Tower Serv., Inc. v. Guderian*, 466 N.W.2d 141, 143 (N.D.1991). As this Court has observed, the materiality of an alteration of a principal's obligation is irrelevant; under N.D.C.C. § 22–01–15, a guarantor is exonerated if the creditor alters the principal's original obligation "in any respect" without the guarantor's consent. *Tri–Continental Leasing Corp. v. Gunter*, 472 N.W.2d at 439. To be exonerated, a guarantor need not be injured by an alteration in the principal's obligation. *AMF, Inc. v. Fredericks*, 212 N.W.2d 834, 836 (N.D.1973). A proposed change which never becomes effective will not release a guarantor. 38A C.J.S. *Guaranty* § 86 (1996).

[¶ 11] Here, Ag Services unilaterally assessed service charges and legal fees to Hoggarths' 1993 loan account. Hoggarths objected to these charges and it has not been asserted they paid these charges. We conclude Hoggarths' original obligation to Ag Services was not altered in any respect. We, therefore, conclude the trial court erred, as a matter of law, in determining the guarantors were exonerated under N.D.C.C. § 22–01–15.

*See Ralston–Purina Co. v. Carter,* 210 Cal. App.2d 372, 26 Cal.Rptr. 690 (Cal.App.1962), where the court determined a guarantor was not exonerated under Cal.Civ.Code § 2819 when the recipient of a guaranty of the purchase price of merchandise gave the principal cash reimbursement for merchandise purchased from another party. The court said: "In our present case we see no alteration of the guaranty but merely an attempt by the recipient thereof to charge the guarantor with items under the guaranty for which he was not liable. This is not an alteration." *Id.* at 694. *See also Glickman v. Collins,* 13 Cal.3d 852, 120 Cal.Rptr. 76, 533 P.2d 204, 211 (Cal.1975) (defendant, who had guarantied the obligation of plaintiff's former husband for alimony and child support, was "not discharged of her obligation merely by reason of plaintiff's efforts to recover [ ] medical insurance payments from her ... [which] she never agreed to guaranty"); *Thurber v. Fisher,* 124 Cal.App. 312, 12 P.2d 481, 482 (Cal.App.1932) (to exonerate a guarantor, an alteration of the original obligation must meet the essentials of a contract).[1]

■ [¶ 12] Midwest contends the service charges and legal fees Ag Services assessed to Hoggarths' 1993 loan account violated the following provision of the 1993 loan workout agreement:

> The advances made by Ag Services pursuant to the financing arrangement with Monte Hoggarth and Roger Hoggarth will not include expenses incurred by Ag Services for attorneys' fees, postage, appraisals, grain measuring, or other similar expenses.

Midwest contends their guaranty was a conditional guaranty limiting their liability and the following language in the guaranty shows "if Ag Services does not comply with its obligations then the guarantors are not expected to honor their promises either":

> The undersigned guarantors acknowledge upon the execution of this instrument it shall be in full force and effect providing that the lender, above-named, does honor its obligations under the loan agreement with the HOGGARTHS to be executed contemporaneously herein.

Midwest argues: "Therefore, as a matter of contract law, the breach of the workout contract by Ag Services, which breach was apparently intentional, triggered the condition contained in the guaranty and resulted in the guaranty being rendered unenforceable."

[¶ 13] If the intent of the language that "advances made by Ag Services ... will not include expenses incurred by Ag Services for attorneys' fees, postage, appraisals, grain measuring, or other similar expenses," was, as Midwest asserts in its brief, "that after the agreement was signed, there would be no further such charges made *at all,*" the language was not well-suited to the intent.

> As commonly understood, an advance is "a furnishing of money or goods for others, in expectation of reimbursement * * * a loan" (Webster's New Twentieth Century Dictionary [2d ed unabridged] ), or the payment of "money or render[ing] other value before it is due * * * furnish[ing] something before an equivalent is received," or loaning or furnishing on credit (Black's Law Dictionary 52 [6th ed] ).

*In re Kimberly H.,* 196 A.D.2d 192, 609 N.Y.S.2d 990, 991 (A.D.1994). *See also, Whittemore Homes, Inc. v. Fleishman,* 190 Cal.App.2d 554, 12 Cal.Rptr. 235, 236 (Cal. App.1961) ("The word 'advance' in the connotation here used, commonly means a loan of money."); *Brock v. Fidelity & Deposit Co.,* 10 Cal.2d 512, 75 P.2d 605, 607 (Cal.1938) ("The word 'advance,' as ordinarily used, implies a loan of money.").

1. Section 22–01–15, N.D.C.C. (which, as noted in the source note to § 22–01–15, was codified as § 1666 of the Civil Code of 1877 (Revised Codes of Territory of Dakota (1877))) was earlier codified as § 1551, Civil Code of 1865 (Laws of Dakota Territory 1870–1871), which was approved on January 12, 1866. The provision, like California Civil Code § 2819, enacted in 1872, was drawn from Section 1551 of the Field Code proposed for New York in 1865. Because N.D.C.C. § 22–01–15 and Cal.Civ.Code § 2819 share a common derivation in the Field Code, "California court decisions construing Field Code sections, while not binding, are entitled to respectful consideration, and may be 'persuasive and should not be ignored.' " *Glatt v. Bank of Kirkwood Plaza,* 383 N.W.2d 473, 477 n. 4 (N.D. 1986), quoting *Becker v. Becker,* 262 N.W.2d 478, 483 (N.D.1978).

[¶ 14] We conclude the phrase "[t]he advances made by Ag Services pursuant to the financing arrangement" in the loan agreement referred only to funds Ag Services loaned to Hoggarths for their actual farm operating expenses, and did not include expenses for other things, such as attorney fees, Ag Services charged to Hoggarths' 1993 loan account, which were in addition to the "advances."

[¶ 15] Furthermore, the guaranty executed by the guarantors limited the guaranty to $150,000 and specifically contemplated that Hoggarths might become obligated to Ag Services for more than that, but the liability of the guarantors "will not exceed [$150,000] regardless of the actual unpaid obligation owed by the HOGGARTHS at the time of maturity of the debt." The guaranty also specified the guarantors' liability "shall not be affected or impaired by the existence from time to time of indebtedness from the HOGGARTHS to the lender in excess of the limit of liability of this Guaranty."

[¶ 16] We conclude Ag Service's assessment of charges against the Hoggarths' 1993 loan account for a loan application fee, mailing expenses, and legal fees did not breach the parties' loan workout agreement.

[¶ 17] Because Ag Services advanced more than $150,000 to Hoggarths under the 1993 loan agreement, and Ag Services' assessment of expenses against Hoggarths' 1993 loan account was not an exonerating alteration of the Hoggarths' original obligation or a breach of the 1993 loan agreement, we conclude Ag Services is entitled to recover under the guaranty as a matter of law.

[¶ 18] We reverse the summary judgment in favor of Midwest and remand for entry of judgment in favor of Ag Services.

[¶ 19] VANDE WALLE, C.J., and NEUMANN and SANDSTROM, JJ., concur.

[¶ 20] The Honorable HERBERT L. MESCHKE, a member of the Court when this case was heard, retired effective October 1, 1998, and did not participate in this decision.

